UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY BILLS,

                Plaintiff,         Civil Action No. 15-11414
                                           Honorable Matthew F. Leitman
    v.                                     Magistrate Judge David R. Grand

RICHARD McKEON, MDOC
DEPUTY DIRECTOR; RICHARD
D. RUSSELL, MDOC MANAGER
OF PRISON INTERNAL AFFAIRS
DIVISION; PAUL KLEE, ARF WARDEN;
VIRGIL B. WEBB, ARF ADMINISTRATIVE
ASSISTANCE; LEE McROBERTS, ARF
DEPUTY WARDEN; SHERMAN
CAMPBELL, ARF DEPUTY WARDEN;
EATON, ARF GRIEVANCE COORDINATOR;
RENEE DIVER, ARF BUSINESS OFFICE
MANAGER SUPERVISOR; VAUGHN A.
STEWART, ARF ADMINISTRATIVE OFFICER
OF BUSINESS ACCOUNTING; and JANE DOE
OR JOHN DOE,

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT
## DEFENDANTS' MOTIONS TO DISMISS [28, 32, 41]

      This is a prisoner civil rights case in which *pro se* plaintiff Ricky Bills ("Bills") has sued a number of current and former Michigan Department of Corrections ("MDOC") employees and agents (the "Defendants") related to the alleged improper handling of his prisoner bank account while he was incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan ("ARF"). (First Amended Complaint, Doc. #18). Before the Court are three motions to dismiss filed by all of the Defendants who were specifically identified in Bills' first amended complaint: (1) an August 18, 2016 motion to dismiss filed by Defendants Warden Paul Klee, Deputy Warden Sherman Campbell, Administrative Assistant Virgil Webb, Grievance Coordinator James Eaton, Business Manager Vaughn Stewart, Accounting Technician Renee Diver, and

Central Office Hearing Administrator Richard Russell[1] (Doc. #28) (the "MDOC Defendants' Motion"); (2) an August 24, 2016 motion to dismiss filed by Defendant ARF Deputy Warden Lee McRoberts (Doc. #32)[2]; and (3) an October 18, 2016 motion to dismiss filed by Defendant (former) MDOC Director Richard McKeon (Doc. #41). Bills filed responses to these motions. (Docs. #46, #48). An Order of Reference was entered on August 2, 2016, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #25). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motions to dismiss **(Docs. #28, #32, #41)** be **GRANTED**.

## II. REPORT

### A. Background

Bills brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that "he was deprived of a right Protected Procedural Due Process when it comes to MDOC's grievance procedure and access to the courts." (Doc. #18 at 2). Bills' claims seem to stem from his assertion that, in two respects, the MDOC and its employees misappropriated or misapplied monies that were deposited into his prison bank account.

---

[1] These defendants assert that other than Russell, they were all MDOC employees stationed at ARF. (Doc. #28 at 7, Doc. #32 at 7). Although Russell is employed as a "Central Office Hearing Administrator . . . part of his duties include management of MDOC's Grievance Section." (Doc. #28 at 7).

[2] In his motion, defendant McRoberts indicates that he is joining in the MDOC Defendants' Motion, and the Court will treat that Motion as applying to him as well.

### i. MDOC's Failure to Collect/Remit Court Fees

The first issue relates to a 2008 Ingham County Circuit Court action (Case No. 08-1375-AA, the "Ingham County Action") in which Bills sued the MDOC. (Doc. #18 at 41). Attached to Bills' amended complaint in the instant federal court action is an October 7, 2008 order from the Ingham County Circuit Court in that action requiring him to pay an "initial partial filing fee" of $11.25 (the "Order"). (*Id.*). The court further ordered: "Pursuant to MCL 600.2963(5), in addition to payment of the partial filing fee, the [MDOC] is ordered to retain 50% of all future deposits of [Bills] until the sum of $138.75 is accrued to satisfy [Bills'] filing fee obligation." (*Id.*). The Order "suspended" Bills' action, and, importantly to Bills' instant claims, provided that if he did not submit the filing fee within 21 days, the "Order will **EXPIRE** and this matter will not proceed further. This Order will expire on **October 28, 2008**." (*Id.*) (emphasis in original). It appears that Bills never paid the filing fee, and that pursuant to MCL 600.2963, his attempts to commence a future lawsuit were rejected. (*Id.* at 43-44) (5/3/11 and 6/17/11 correspondences from Ingham County Circuit Court to Bills stating, "You claim the Court refused to allow you to file an action" and that "[t]he Court is returning your petition for judicial review and accompanying documents. Your request to suspend the $150 filing fee cannot be honored because you currently owe outstanding fees [i.e., the $138.75 from the aforementioned action]. The Court waives/suspends filing fees in prisoner cases in accordance with MCL 600.2963 which states: 'A prisoner who has failed to pay outstanding fees and costs as required under this section shall not commence a new civil action or appeal until the outstanding fees and costs have been paid.'").

Years later, on February 4, 2014, Bills filed a grievance about this issue which is difficult to decipher. (*Id.* at 52). However, the Step II and III portions of his grievance are legible, and

3

from that document it appears that Bills challenged the fact that between October 2008 and February 2014, although the MDOC had taken money out of his account to pay debts he owed to the MDOC, the MDOC did not take money out of his account to pay off the $138.75 filing fee (which had a balance of $113.75 at the time of the grievance). (*Id.* at 54). Bills asserts that the MDOC's continued failure to collect money from him and remit it to the Ingham County Circuit Court is a violation of the Order and of his constitutional rights because it allegedly denies him access to the courts. (*Id.*).

### ii.     MDOC Handling of Monetary "Gift"

The second issue raised in Bills' amended complaint relates to the MDOC's handling of a $20[3] gift which Bills' alleged aunt, Linda Ridgeway, attempted to deposit into his prison JPay bank account sometime around December 12, 2013. (*Id.* at 31). Apparently, the MDOC disallowed this "gift" because it determined that Ridgeway was an immediate relative (mother) of another inmate, and the MDOC has a policy (Policy Directive 04.02.105, Section O), which provides that funds from a family member of one prisoner may not be credited to the account of another prisoner. (*Id.* at 56-57). Bills claims that the Prison Business Accounting Office at ARF placed a stop/freeze on the gift. (*Id.*; *id.* at 5).

Bills makes somewhat inconsistent assertions about what happened next with respect to the money. On the one hand, Bills alleges that the MDOC required him to return the $20 gift to Ridgeway via his JPay account, and seems to admit that the funds were, in fact, returned. (*Id.* at 58-61). After filing a grievance and being shown documentation reflecting the money's return, Bills seemed to agree that the underlying issue had been resolved as he wrote, "As I no longer owe[] Linda Ridgeway remove hold on [my account]." (*Id.* at 60-61). At the same time,

---

[3] In some of the attachments to Bills' complaint there is a reference to the "gift" being $40. (*E.g., id.* at 58, 60-61). For ease of discussion, the Court will refer to the $20 figure used throughout the complaint.

4

however, Bills alleges that before the MDOC returned the money to Ridgeway from his JPay account, it withheld $10 and applied it towards debts Bills owed to the MDOC.  (*Id.* at 56, 58). Either way, Bills admits that the money belongs to Ridgeway, asserting that he "agreed[] to return the 'Money,'" to Ridgeway, that "(MDOC) can not legally take nor remove[] money that wasn't mine[] . . . IT SHOULD HAVE BEEN RETURNED!!!" and that "[t]oday is May 11, 2016 and the ($20) still have NOT been returned to [RIDGEWAY]."  (*Id.* at 31-32; *see also id.* at 6).

### B. Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "'is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements."  *Hogan v. Visio Fin. Servs., Inc.*, 2015 WL 3916084, at *3 (E.D. Mich. June 25,

2015) (quoting *Iqbal*, 556 U.S. at 678); *see also Twombly*, 550 U.S. at 555. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When a court is presented with a Rule 12(b)(6) motion testing the sufficiency of a complaint, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and their "complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### C. ANALYSIS

#### i. MDOC's Failure to Collect/Remit Court Fees

Bills alleges that the MDOC Defendants violated the October 7, 2008 Order by failing to collect money from him and then remit it to the Ingham County Circuit Court. (Doc. #18 at 9-10). Bills claims that the alleged inaction has resulted in a denial of access to the courts because it has caused his outstanding filing fee balance owed to that Court to remain in place, and that the Court rejected his attempt to commence new litigation in 2011 due to the outstanding balance. (*Id.* at 44). This claim fails as a matter of law because he has not properly alleged

6

wrongdoing by any of the Defendants.

"A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury." *See Lewis v. Casey*, 518 U.S. 343, 349, 351-53, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). "To meet this requirement, a plaintiff must show that the actions of the prison officials 'hindered the prisoner's efforts to pursue a nonfrivolous claim.'" *Collins v. Massick*, No. 12-15421, 2014 WL 7204935, at *4 (E.D. Mich. Dec. 17, 2014) (quoting *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir.1996)). Here, Bills' denial of access to the courts claim is based solely on an assertion that the Defendants violated the October 7, 2008 Ingham County Circuit Court Order by failing, in subsequent years, to collect monies from his prisoner account and transmit them to that court. (Doc. #18 at 10, 54) ("When Court Orders are not being paid in a timely manner, prisoners are being denied their . . . Rights to Access to the Courts, which is what has be [sic] happening with Plaintiff Bills," "The (MDOC) Failed To [pay the Ingham County Circuit Court] and it leave me still oweing [sic] the Court . . . . "). Contrary to the Defendants' argument, Bills at least arguably alleges that this inaction caused him to suffer an actual injury as it allegedly resulted in him not being allowed to file a new Ingham County Circuit Court action in 2011. (*Id.* at 43-44; *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline.")).

However, the facts alleged by Bills and documents attached to his amended complaint establish that he can show no wrongdoing by the Defendants in connection with this claim. The Order, by its own terms expired on October 28, 2008. (Doc. #18 at 41) (10/7/08 Order stating that the "Order will **EXPIRE** and this matter will not proceed further. This Order will expire on

7

**October 28, 2008**.") (emphasis in original). Thus, neither the MDOC nor the individual Defendants were obligated under the Order to act after that date. Since all of Bills' allegations on this matter relate to Defendants' alleged failure to act on subsequent dates, Bills cannot show that they violated the court Order, and his claim must fail.

### ii. MDOC's Failure to Return "Gift" to Ridgeway

Bills' other claim is that the Defendants failed to return to Ridgeway all of the money she allegedly "gifted" to him. (*Id.* at 5, 31). Bills lacks standing to assert this claim because he admits the money belongs to Ridgeway, not him. To bring a § 1983 claim, the "plaintiff must meet both constitutional and prudential requirements to establish individual standing." *Obama v. Napolean*, No. 14-10997, 2015 WL 3506026, at *3 (E.D. Mich. June 2, 2015). "To meet the minimum constitutional standards for individual standing under Article III, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citations omitted). "A plaintiff must also meet the prudential requirements for standing developed by the Supreme Court. For prudential standing, a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* (citations omitted).

Here, Bills fails to satisfy the standing requirements because, as shown above, *supra* at 4-5, he admits that the money in question rightfully belongs to Ridgeway. Since any failure by the Defendants to fully refund the money to Ridgeway causes an injury to her, rather than Bills, his § 1983 claim must be dismissed as a matter of law.

### iii. Bills Fails to Allege the Requisite Personal Involvement by Defendants

Bills' claims against the individual Defendants also fail because he has not alleged their personal involvement in the actual alleged wrongdoing. In order to demonstrate liability under § 1983 as to any particular defendant, a plaintiff must first establish that that defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States. *See Baker v. McCollan*, 443 U.S. 137 (1979). The plaintiff also must make a clear showing that the defendant was personally involved ***in the activity that forms the basis of the complaint***. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, § 1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability; rather, a defendant can only be liable under § 1983 if the plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, ***the allegedly unconstitutional conduct***. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421. A supervisory official's mere awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger § 1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Rather, liability under § 1983 must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee*, 199 F.3d at 300. The law in this Circuit is also clear that the mere "'denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.'" *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee*, 199 F.3d at 300). *See also Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th

9

Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation.").

Here, Bills' allegations against the individual Defendants show he cannot satisfy the above requirements.

### a. MDOC Deputy Director (former) McKeon

Bills alleges that McKeon "received notice" of Bills' complaint about the handling of his prison account and that "therefore he is included as one of the defendants." (Doc. #18 at 2). Bills also alleges that when his Step III grievance "arrived at [McKeon's] office, [] McKeon [] failed to follow the grievance procedures, which was a violation of [Bills'] Procedural Due Process Right." (*Id.*). As discussed above, however, McKeon's mere knowledge of Bills' claims and failure to take the action Bills believes should have been taken is an inadequate basis to impose § 1983 liability against him. *Poe*, 853 F.2d at 429; *Shehee*, 199 F.3d at 300. Similarly, Bills' vague allegation that McKeon "failed to follow the grievance procedures," (Doc. #18 at 2), does not state a claim for relief. The law is clear that State officials are not required to follow their own procedural statutes and rules as a matter of federal due process. *Sweeton v. Brown*, 27 F. 3d 1162, 1165 (6th Cir. 1994) (en banc); *see also Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005). Accordingly, Bills' claims against McKeon should be dismissed.

### b. Hearings Administrator Russell

Bills' claims against defendant Russell similarly fail. In his amended complaint, Bills

10

alleges that he named Russell as a defendant "because [] [w]hen STEP THREE GRIEVANCE APPEAL ARRIVED AT HIS OFFICE, HE SIGNED IT WITHOUT CONDUCTING AN INVESTIGATION OF THE MATTER . . . . " (Doc. #18 at 11). Bills' assertion that, in light of this conduct, "[Russell] played an active role in Denying [Bills] Access to the Courts," (*id.*), misapprehends the case law discussed above because it conflates the denial of a grievance with being actively involved in the underlying wrong giving rise to the grievance. *See Diamond v. Jackson*, No. 15-P164, 2016 WL 411112, at *5 (W.D. Ky. Feb. 2, 2016) ("A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances."); *see also Lee*, 104 F. App'x at 493.

### c. Warden Klee

Bills states that the

> reason for filing a complaint on Defendant Klee is [that he is the] Warden of Adrian Correctional Facility [ARF] . . . [and] supervises the business concerns, moneys [sic] of the institution, respond to prisoner grievance, develop procedures to implement, and ensure compliance with MDOC policies . . . [and] is also in charge of everyday activities at ARF and responsible for employees working at ARF.

(Doc. #18 at 15). These allegations are classic *respondeat superior* liability claims, which, for the reasons discussed above, do not permit the imposition of § 1983 liability.[4] *Monell*, 436 U.S. at 691; *Poe*, 853 F.2d at 429; *Shehee*, 199 F.3d at 300.

### d. Warden's Administrative Assistant Webb

Bills states that the Warden's Administrative Assistant Webb is

---

[4] Bills also alleges that Klee smiled at him at one point and taunted him about not being able to file a lawsuit due to his court fee balance. (Doc. #18 at 15). Bills contends that this behavior constitutes "deliberate indifference" and "encourag[es] such behavior of hindering and denying/depriving [] Bills' access to Court . . . " (*Id.*). As explained above, however, the Order expired back in 2008, and comments of the type Bills alleges – if they in fact occurred – are not actionable constitutional violations. *Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003) ("verbal insults of an inmate have not been deemed actionable in actions brought pursuant to § 1983") (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)).

> being sued because he were [sic] the first Prison Official, who were [sic] in charge that could of setted [sic] the matter straight. Instead he, tell this Plaintiff to file a grievance . . . . Webb [] also stated that if [] Bills wants the Courts to be paid that he have his family members or friends too [sic] mail the money to the Court.

(Doc #18 at 17). These allegations fail to state a constitutional claim against Webb. As an administrative assistant to the Warden, Bills has not shown that Webb owed any specific duty to Bills with respect to handling of his prison bank account, and the mere fact that Webb supposedly "could have handled the situation [the way Bills would have liked]" is not enough to impose § 1983 liability on him. (*Id.* at 18). Moreover, since the Order expired in 2008, Webb's suggestion to Bills that he work with family or friends to pay off any outstanding court obligations seems like a good-faith recommendation for addressing Bills' concern.

### e. Deputy Wardens McRoberts and Campbell

In his amended complaint, Bills asserts that Deputy Wardens McRoberts and Campbell are named as defendants because each "signed a grievance" in which Bills grieved the handling of his prisoner account. (*Id.* at 20, 24). Bills alleges that McRoberts and Campbell wrongly determined that the grievance raised multiple issues in violation of a MDOC Policy Directive requiring inmates to grieve each instance of alleged wrongdoing separately. (*Id.*). Bills also alleges that these two defendants "did not investigate the allegations of his grievance." (*Id.*). Finally, Bills alleges that they "Knew of the Wrongful Violation That Were Being Committed. But They Still UPHELDED [sic] THE GRIEVANCE." (*Id.* at 26). Once again, in seeking to impose § 1983 liability against an individual who was merely involved in responding to a grievance, Bills has conflated the denial of a grievance with being actively involved in the underlying wrong on which the grievance is predicated.[5] *See Diamond v. Jackson*, No. 15-P164,

---

[5] In this portion of his amended complaint, Bills makes vague references to a "Corruption to Conspire." (Doc. #18 at 26). To the extent Bills intended to state a civil conspiracy claim, he has failed as a matter of law to do so. A civil conspiracy under § 1983 is "an agreement between

12

2016 WL 411112, at *5 (W.D. Ky. Feb. 2, 2016) ("A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances."); *see also Lee*, 104 F. App'x at 493. Moreover, to the extent Bills is merely challenging the grievance procedure that was followed in his case (or, stated differently, that the appropriate grievance procedure was not followed), he fails to raise a constitutional claim; the law is clear that "there is no inherent constitutional right to an effective prison grievance procedure." *See Argue v. Hofmeyer*, 80 Fed. Appx. 427, 430 (6th Cir. 2003). *See also McGee v. Grant*, 863 F.2d 883, 1988 WL 131414, *1 (6th Cir. 1988) ("[I]nmate grievance procedures are not constitutionally required in state prison systems, therefore, any failure on the part of defendants to follow grievance procedures does not give rise to a § 1983 claim."); *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 Fed. Appx. 441, 445 (6th Cir. 2005).

### f. **Accounting Technician Diver and Business Office Manager Supervisor Stewart**

Bills alleges that Diver violated his rights in connection with the MDOC's failure to remit half of Ridgeway's December 2013 gift to the Ingham County Circuit Court pursuant to the Order. (Doc. #18 at 31, 32). More specifically, Bills alleges that Diver "was Deliberately Indifferent to the Court Order because he failure [sic] to comply . . . he should be held in contempt of Court for not followin [sic] the Court Order." (*Id.* at 32). This claim fails for two

---

two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). To state such a claim, Bills was required to allege the existence of a single plan, that the alleged coconspirators shared in the general conspiratorial objective to deprive him of a federal right, and that an overt action committed in furtherance of the conspiracy caused him an injury. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Such allegations must be pled with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one). Here, Bills' vague reference to a "corruption to conspire" clearly does not contain "enough factual matter (taken as true) to suggest that an agreement was made" to harm him. Thus, this claim fails as a matter of law.

13

reasons. First, the Order, by its own terms, expired in 2008, and thus no action that Diver took in 2013 could have violated it. Second, it appears from Bills' own allegations that Diver's sole involvement with this issue was to "interview[] him on the First Step Grievance" and then provide a grievance response. (*Id.*). As discussed above, mere involvement in the grievance response process does not give rise to § 1983 liability.[6] *See Diamond*, 2016 WL 411112, at *5; *see also Lee*, 104 F. App'x at 493.

As to Stewart, Bills alleges that he is "included as a defendant [] because he is Defendant Diver['s] Superior and could have corrected the 'Malfeasance' of the (ARF BUSINESS ACCOUNTING OFFICE) and put a stop too [sic] Defendnat [sic] Diver, Corrupted Act." (Doc. #18 at 28). Again, because there is no *respondeat superior* liability in the § 1983 context, Bills' claim against Stewart fails as a matter of law. *Poe*, 853 F.2d at 429; *Shehee*, 199 F.3d at 300. And, as explained above with many of the other Defendants, Bills' assertion that "Defendant Stewart, also played a part in this corruption when he responsed [sic] to [one of Bills' grievances]" in a manner with which Bills disagrees, does not give rise to liability. *See Diamond*, 2016 WL 411112, at *5; *see also Lee*, 104 F. App'x at 493.

### g. **ARF Grievance Coordinator Eaton**

Bills alleges that he is suing Eaton "because he was in charge of [Bills'] grievance against ARF Business Accounting Office." (Doc. #18 at 36). Bills essentially alleges that Eaton

---

[6] Bills also takes issue with the manner in which Diver conducted the grievance investigation. (Doc. #18 at 33) (alleging that Diver made false statements in the grievance response, which "Totally Disregards [] the 'Due Process of Grievance Procedures & Policy and a Violation of Interferrence [sic] with [] BILLS [SIC] RIGHTS TO A FUNDAMENTAL INVESTIGATION AND REDRESS REMEDY"). Such claims fail because, as discussed above, inmates have no constitutional right to effective grievance procedures. *See Argue*, 80 Fed. Appx. at 430; *McGee*, 1988 WL 131414, at *1. Additionally, any claim based on an alleged failure to follow the MDOC's own internal procedures fails as a matter of law. The law is clear that State officials are not required to follow their own procedural statutes and rules as a matter of federal due process. *Sweeton v. Brown*, 27 F. 3d 1162, 1165 (6th Cir. 1994) (en banc); *see also Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005).

did not conduct a proper investigation of his grievance in violation of the relevant MDOC grievance policy. (*Id.*). As discussed above, such claims do not give rise to § 1983 liability. *See Diamond*, 2016 WL 411112, at *5; *see also Lee*, 104 F. App'x at 493; *Sweeton*, 27 F. 3d at 1165; *Coleman*, 363 F. Supp. 2d at 903.

### iv. Bills' Other Allegations Fail to State Claims for Relief

Bills' amended complaint also fails to state a claim for relief in other respects. First, while he identifies Defendant "Jane Doe or John Doe" in the caption of his amended complaint, the body of that document attributes no specific actionable conduct to such person. Thus, any claim against "Jane Doe or John Doe" should be dismissed. *See Rizzo*, 423 U.S. at 377; *Bellamy*, 729 F.2d at 421.

Second, Bills seems to challenge the general grievance procedures employed by the MDOC, claiming that "[i]t Is Harmful and NOT In The Best Interests of Prisoner's [sic] To Attempt Exhaust The Grievances Procedures." (Doc. #18 at 7). This argument fails because Bills' claims are not being denied based on a failure to exhaust. Indeed, courts recognize that prisoners are only required to exhaust "available" remedies, and, therefore, if defendants deny a prisoner access to the grievance process, "that process would not be 'available' to him, and its exhaustion would not be required under § 1997e(a)." *Hull v. Baker*, 2011 WL 5361061 at *8 (W.D. Mich. Nov. 4, 2011).

Finally, to the extent Bills attempts to allege an unlawful retaliation claim, he has failed, as a matter of law, to do so. The only specific instance of any sort of "retaliation" mentioned in Bills' amended complaint is the "retaliation grievance" he filed against "Officer Hewitt [] for destroying [Bills'] Property . . . while shaking down [Bills'] cell." (Doc. #18 at 3). But Bills admits that the alleged "shakedown" resulted in the confiscation of illicit property, which was

upheld pursuant to an internal hearing process. (*Id.* at 16). Moreover, the person allegedly responsible for the "shakedown" – Officer Hewitt – is not named as a defendant in this action.[7]

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motions to Dismiss **(Docs. #28, #32, #41)** be **GRANTED** and that Bills' amended complaint **(Doc. #18)** be **DISMISSED**.

Dated: January 4, 2017                    s/ David R. Grand

                                          DAVID R. GRAND
                                          UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

---

[7] While certain Defendants make additional arguments as to why Bills' claims against them should be dismissed, the Court need not address them because all of Bills' claims are subject to dismissal for the reasons stated above.

16

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 4, 2017.

                                                  s/Eddrey O. Butts
                                                  EDDREY O. BUTTS
                                                  Case Manager