UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKEY BILLS,

                Plaintiff,

v.

PAUL KLEE, et al.,

                Defendants.

_____/

Civil Action No. 15-11414
Honorable Matthew F. Leitman
Magistrate Judge David R. Grand

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART THE MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [75]

Rickey Bills ("Bills") brings this civil rights suit under 42 U.S.C. §1983 against the following Michigan Department of Corrections ("MDOC") employees: Paul Klee ("Klee"), Warden of the Adrian Correctional Facility ("ARF"); Sherman Campbell ("Campbell"), Deputy Warden of ARF; Lee McRoberts ("McRoberts"), Deputy Warden of ARF; Virgil Webb ("Webb"), Administrative Assistant at ARF; James Eaton ("Eaton"), Grievance Coordinator at ARF; Renee Diver ("Diver"), Business Office Manager at ARF; Vaughn Stewart ("Stewart"), employee of the accounting office at ARF; and Kristopher Steece ("Steece"), Deputy Warden of the Macomb Correctional Facility ("MRF") (collectively, "Defendants"). Bills sues the Defendants in their individual and official capacities.

Though his claims have been amended multiple times, in his operative complaint, filed on May 25, 2018, Bills alleges that Defendants (1) intentionally interfered with his right to access the courts; (2) denied him procedural due process under MDOC's grievance procedures; and (3) retaliated against him for filing grievances and lawsuits. (Doc. #67 at 1). Bills seeks injunctive relief and damages.

1

Now before the Court is the Defendants' Motion for Summary Judgment, filed October 5, 2018.[1]  (Doc. #75).  After Bills initially failed to respond to this motion, the Court issued an Order to Show Cause on December 6, 2018.  (Doc. #76).  Bills then filed a response on December 18, 2018.  (Doc. #77).  Defendants did not file a reply.  The Court finds that the facts and legal issues are adequately presented in the briefs, and declines to order a hearing on this matter.

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment **(Doc. #75)** be **GRANTED IN PART AND DENIED IN PART**.  Specifically, the motion should be **DENIED** as to Bills' denial of access to the courts claim against defendants Diver and Stewart in their individual capacities, and as to Bills' retaliatory transfer claim against defendant Steece in his individual capacity, but should be **GRANTED** in all other respects.

## II.    REPORT

### A.  Factual Background

This action grows out of a state court complaint Bills filed in 2008 in the Ingham County Circuit Court against the MDOC while he was an inmate at ARF.  (Doc. #1 at 13).[2]  The Ingham County Circuit Court issued an order on October 7, 2008, advising Bills that he was required to pay an "initial partial filing fee" of $11.25 to maintain his action (the "Order").  (*Id.*).  The Order

---

[1] On July 26, 2018, the undersigned was referred pretrial matters pursuant to 28 U.S.C. §636(b). (Doc. #72).

[2] As noted above, after filing an initial complaint in this action on April 20, 2015, Bills was permitted to file an amended complaint, which he did on May 31, 2016 (Doc. #18).  He was then permitted to file a second amended complaint, which he did on May 25, 2018.  (Doc. #67). Although Bills complains about the same general set of circumstances in his various complaints, many of the background facts contained in his initial complaints do not appear in his second amended complaint.  However, those background facts appear largely undisputed, and aid in an understanding of the nature of Bills' instant claims.  Accordingly, the Court will reiterate the pertinent ones here.

also provided, "Pursuant to MCL 600.2963(5), in addition to payment of the partial filing fee, the [MDOC] is ordered to retain 50% of all future deposits of [Bills] until the sum of $138.75 is accrued to satisfy [Bills'] filing fee obligation." (*Id.*). Finally, the Order provided:

> **IT IS FURTHER ORDERED** that all documents submitted by [Bills] shall be returned to [him], along with two certified copies of this Order. Additionally, one certified copy of this Order shall be forwarded to the MDOC facility where [Bills] is lodged.

> **IT IS FURTHER ORDERED** that within **21** days of the date of this Order, [Bills] must resubmit to this Court all documents relating to this action, with the filing fee as Ordered herein, and one of the certified copies of this Order. If these documents are not received within **21** days of this Order, said Order will **EXPIRE** and this matter will not proceed further. This Order will expire on **October 28, 2008**.

(*Id.*) (emphasis in original).

It appears that Bills resubmitted the case documents and initial partial filing fee, but that the balance of $138.75 was never paid to the state court. (*Id.* at 14) (6/17/11 letter from Ingham County Circuit Court instructing Bills to "contact your facility's business office to arrange for payment of the outstanding $138.75 . . .").

During the next few years, Bills filed additional papers in the 2008 state court case, including a 2011 petition to proceed *in forma pauperis*. (*Id.* at 18). That petition apparently was denied, which caused Bills to file a "Motion for Reconsideration" in which he asserted that he was being "penalized [] for something that the [MDOC] is responsible for, namely the collection of filing fees and court costs from prisoners in custody." (*Id.* at 14, 18-20). That Motion for Reconsideration was denied on June 17, 2011. (*Id.* at 14) (". . . reconsideration will not be entertained.").

During this same general timeframe – April 27, 2011, to be exact – Bills attempted to file a *new* state court action seeking judicial review of the MDOC's determination that he was

3

"mentally ill and that he is to receive psychotropic medications of which he cannot refuse," but which he "does not want anything to do with . . ." (*Id.* at 7-8, 21-39). According to Bills, "the [state] court denied judicial review because of outstanding fees . . ." due on his 2008 state court case. (*Id.* at 8).

Finally, it appears that a few years later, Bills filed, *in his 2008 state court case*, a "Motion to Dismiss Debts consisting of [his] filing fee in [that] matter." (*Id.* at 16). That motion was denied in an order dated January 30, 2014, with the state court judge explaining:

> [Bills] argues that this Court has failed to act to collect said filing fee in the amount of $138.75 as ordered to be collected from [Bills'] prisoner account by the [MDOC]. [Bills'] argument is without merit. [Bills'] trust account statement demonstrates that the [MDOC] has been collecting the filing fee. The [MDOC] has not sent the fees [to be] paid to this Court because this Court's Order requires that the fee be sent when the entire amount of $138.75 has accrued, which has not yet occurred.

(*Id.* at 16).

In his operative complaint in this federal court action, Bills makes various allegations as to why his 2008 state court filing fee balance remains unpaid. Bills alleges that between the time he filed the state court complaint in 2008 and the time he filed the instant action, "he received in excess of $400.00, which was more than sufficient to pay the remaining debt of $138.75" that he owed to the state court in connection with his 2008 case. (Doc. #67 at ¶29). While Bills accuses some ARF supervisory officials of not properly handling his grievances and essentially being messengers of decisions with which he disagrees,[3] he lays the actual blame on Defendants Diver

---

[3] For instance, Bills alleges that Defendant Webb merely "told him that the court debt will not be paid until the debt owed to [the prison] was paid in full," and that Bills should have his family members pay the state court directly to extinguish the $138.75 debt. (*Id.* at ¶30). Bills claims that he complained about Webb's comments to Defendants Klee and Campbell. (*Id.* at ¶¶32, 37). Bills claims that Klee responded by saying, "who do you think the court will believe, some prisoner or a prison official?" and that Campbell said, "Have a family member pay your court costs. [The prison] has too many lawsuits." (*Id.* at ¶¶ 34, 37). Bills claims that a few days later, Corrections

and Stewart for failing to use his funds to pay his outstanding state court debt .  (*Id.* at ¶¶43-46).  Specifically, he alleges that Diver was ARF's Business Office Supervisory, and that he "refused to follow the Ingham County Circuit Court Order when he removed money from [] Bills' Prison Account to pay an institutional debt,"[4] and that Stewart "worked in prisoner accounting at ARF," but told Bills to "[h]ave a family member pay your court costs."  (*Id.*).

It appears that Bills was transferred from ARF to the Muskegon Correctional Facility ("MCF") at some point, because he alleges that on March 20, 2017, he was "transferred from [MCF] to [the Macomb Correctional Facility ("MRF")] . . . in retaliation for filing [the grievances] . . ." (*Id.* at 8).  Bills further alleges that the MRF Deputy Warden, Defendant Steece, was advised by Defendants Campbell and Webb that Bills "likes to file lawsuits," and that as a result, just a few days after Bills arrived at MRF, Steece transferred him to the Kinross Correctional Facility ("KCF").  (*Id.*).

Bills then filed a number of internal grievances and ultimately commenced the instant federal court action, claiming in his operative complaint that Defendants: (1) "denied him protected procedural due process under M.D.O.C.'s grievance procedure, in violation of the

---

Officer Hewitt (who is not named as a defendant in this case) entered his cell, covered the window so nobody could see inside, and then took some of Bills' "legal papers," and poured water on his "legal books". (*Id.* at ¶35). Bills claims he was issued a "ticket" for "misuse of state property" as well as "another ticket," and that he was found guilty on both tickets. (*Id.* at ¶36). Bills claims, "this was done in retaliation for his advising Klee about Webb's alleged comments. (*Id.*). Bills claims that he filed grievances against Hewitt and Klee, but that Grievance Coordinator Defendant Eaton "refused to process the grievance against Defendant Klee . . . under the pretext that it was duplicative." (*Id.* at ¶39).

[4] While somewhat unclear, one of Bills' allegations against Diver relates to a $20.00 money order that his aunt tried to deposit into his prison account. Bills seems to assert that Diver "placed a stop/freeze order" on it "because it was illegally sent to [him]," but then "took $10.00 [of the $20.00] for institutional debts." (*Id.* at ¶¶22, 48). Regardless, Bills admits in his amended complaint that he "agreed to have the money returned to his aunt," and thus the handling of the money order did not impact Bills' ability to pursue his state court action. (*Id.* at ¶25; Doc. #77 at 14-15).

Fourteenth Amendment of the United States Constitution"; (2) "intentionally interfered with his right to access the courts by misappropriating funds from his trust account that should have been sent to the court"; and (3) unlawfully retaliated against him for filing grievances.  (Doc. #67 at 1, 4-5).  Bills seeks pecuniary damages and a declaratory judgment that the Defendants' conduct violated his rights under the United States Constitution.

Regardless of the merits of Bills' assertions about *why* his 2008 filing fee balance has not been paid, the bottom line is that: (1) his 2008 case was never heard (and apparently has been stayed for more than a decade); and (2) because that state court "debt" from that 2008 case remains unsatisfied, Bills has been prevented from filing other state court litigation, such as the case he tried to file in 2011 challenging the MDOC's determination that he was mentally ill.

### B.  Procedural Background

Bills initially filed suit on April 20, 2015.  (Doc. #1).  On October 16, 2015, the Honorable Matthew F. Leitman issued an order to show cause as to why Bills' complaint should not be dismissed, or in the alternative, file a first amended complaint.  (Doc. #6).  Bills timely responded, and on May 31, 2016, he filed his first amended complaint.  (Doc. #18).  On August 2, 2016, pretrial matters were referred to the undersigned.  (Doc. #25).  Previous defendants filed motions to dismiss on August 18, 2016, August 24, 2016, and October 18, 2016.  (Docs. #28, #32, #41).  The undersigned issued a Report and Recommendation to grant those motions.  (Doc. #52).  Bills then filed a motion for reconsideration. (Doc. #53).  Judge Leitman terminated Bills' motion for reconsideration and the three motions to dismiss, conditionally appointed counsel for Bills, withdrew the reference to the undersigned, and stayed the action pending the appointment of counsel.  (Doc. #56).

Counsel was appointed for Bills on May 4, 2017.  (Doc. #58).  After several telephonic status conferences, the Court terminated Bills' counsel on February 12, 2018, and allowed Bills to file a motion for leave to amend complaint, which he then did.  (Docs. #64, #65).  On May 25, 2018, Bills filed his second amended complaint, the operative complaint, *pro se*.  (Doc. #67).  The undersigned was referred all pretrial matters on July 26, 2018, and Defendants filed the instant motion for summary judgment on October 5, 2018.[5]  After initially failing to respond to the motion, Bills filed a response on December 18, 2018.  (Doc. #77).  Defendants did not file a reply.

### C.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that

---

[5] Bills argues that Defendants' motion for summary judgment was not timely, since his amended complaint was filed May 25, 2018, and Defendants filed the instant motion October 5, 2018. However, Bills seems to confuse the timing rules that apply to motions to dismiss under Rule 12, and motions for summary judgment under Rule 56.  Whereas motions to dismiss must generally be filed within 21 days after being served with a summons and complaint, Rule 56 provides, "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 12(a)(1)(A)(i), 56(b).  Because Defendant Steece's waiver of service gave him until October 9, 2018 to file his answer, and because Defendants' instant motion for summary judgment was filed on October 5, 2018, no discovery deadline was put in place.  (Docs. #73, #75).  Therefore, Defendants' motion for summary judgment is not tardy.

evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (internal quotations omitted).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed."  *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### D.  Analysis

As noted above, Bills alleges that Defendants: (1) "denied him protected procedural due process under M.D.O.C.'s grievance procedure, in violation of the Fourteenth Amendment of the United States Constitution"; (2) "intentionally interfered with his right to access the courts by

misappropriating funds from his trust account that should have been sent to the court"; and (3) unlawfully "retaliated against [him] for filing grievances regarding their interference with his access to the courts."  (Doc. #67 at 1).  For the reasons that follow, Defendants' motion for summary judgment should be denied as to Bills' denial of access to the courts claim against defendants Diver and Stewart in their individual capacities, and as to Bills' retaliatory transfer claim against defendant Steece in his individual capacity, but should be granted in all other respects.

### 1. Bills Fails to State a Due Process Claim Against Defendants Eaton and Diver Based on a Violation of the MDOC's Grievance Procedure

Bills alleges that he filed "grievances on Officer Hewitt and Defendant Klee for retaliatory acts related to the accounting issue.  Grievance Coordinator Eaton refused to process the grievance against Klee.  Defendant Eaton refused to process the grievance under the pretext it was duplicative." (Doc. #67 at ¶¶39-40).  Bills also seems to take issue with the way Diver responded to Bills' 2014 Step One grievance.  (*Id.* at 7-8).  Although Bills acknowledges "[a] state is not required to have a grievance procedure," he argues, "*if it does* it follows that the procedure would be protected by due process."  (*Id.* at ¶41) (emphasis in original).  He then cites Policy Directive 03.02.130, requiring the Step 1 Grievance Coordinator to "ensure that a thorough investigation was completed for each Step I grievance accepted, and that the response was reviewed by the appropriate supervisor, and that a copy of the response is provided to the grievant by due date." (*Id.* at ¶42).

The premise of Bills' argument is incorrect.  The law makes clear that "[an inmate] has no due process right to file a prison grievance or to have his concerns adequately investigated.  The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure."  *Smith v. Lincoln*, No. 1:10-CV-1178,

2011 WL 529833, at *2 (W.D. Mich. Feb. 8, 2011). *See also Walker v. Michigan Dept. of Corrections,* 128 Fed.App'x 441, 445 (6th Cir. 2005) ("the lack of a constitutional right to unfettered access to a grievance procedure means that Walker is not entitled to relief on his claim that the modified access procedure arbitrarily denied him access to the prison's grievance procedures."); *Young v. Gundy,* 30 F.App'x 568, 569-70 (6th Cir. 2002). *See also McGee v. Grant*, 863 F.2d 883, 1988 WL 131414, *1 (6th Cir. 1988) ("[I]nmate grievance procedures are not constitutionally required in state prison systems, therefore, any failure on the part of defendants to follow grievance procedures does not give rise to a § 1983 claim."); *Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994)(en banc) (state officials are not required to follow their own procedural statutes and rules as a matter of federal due process). Accordingly, Bills' "due process" claim against Defendants Eaton and Diver related to the handling of his grievances fail as a matter of law and should be dismissed.

### 2. Bills' Denial of Access to the Courts Claim Should Proceed Against Defendants Diver and Stewart Only

Bills claims that by mishandling money in his prison account, Defendants unconstitutionally denied him access to the courts. As detailed above, this claim grows out of the Ingham County Circuit Court Order, dated October 7, 2008. (Doc. #1 at 13). The Order suspended Bills' state court action, explaining in relevant part,

> Pursuant to MCL 600.2963(5), in addition to payment of the initial partial filing fee, the Michigan Department of Corrections is ordered to retain 50% of all future deposits of the Plaintiff/Petitioner until the sum of $138.75 is accrued to satisfy Plaintiff/Petitioner's filing fee obligation. . . [] **IT IS FURTHER ORDERED** that within **21** days of the date of this Order, Plaintiff/Petitioner must resubmit to this Court all documents relating to this action, with the filing fee as Ordered herein, and one of the certified copies of this Order. If these documents are not received within **21** days of this Order, said Order will **EXPIRE** and this matter will not proceed further. This Order will expire on **October 28, 2008**.

(*Id.*) (emphasis in original).

It appears that Bills timely resubmitted his state court pleadings and paid the partial filing fee, and that he has attempted ever since to pay off the $138.75 filing fee balance, but that, for whatever reason – whether due to Bills' own spending habits, the allocation of his deposits to balances owed directly to the MDOC, or something else – that balance has, to this day, remained unpaid.  Evidence in the record suggests that this prevented Bills not only from pursing his 2008 state court case, but also a 2011 action he tried to commence in order to challenge the MDOC's determination that he was mentally ill and was required to be administered psychotropic drugs that he did not wish to take.

In their summary judgment motion, Defendants argue that Bills was not denied access to the courts, as a matter of law, because his "Second Amended Complaint is silent as to whether he suffered an 'actual injury' [.]  Nor has Bills asserted that he has no other remedy for the lost claim other than in the present denial of access of suit."  (Doc. #75 at 27).  The Court finds that construing Bills' allegations liberally, and in light of the record evidence discussed above, he has done enough to allege a denial of access to the courts claim.  However, to the extent he has any such claim, it would only be against defendants Diver and Stewart (in their individual capacities[6]), and Bills' related claim against defendants Campbell, Klee, Webb, and McRoberts should be dismissed.

As the Supreme Court explained in *Bounds v. Smith*, "It is now established beyond doubt that prisoners have a constitutional right of access to the courts."  430 U.S. 817, 821 (1977).  There are two categories of denial of access to courts claims:

> In the first [category] are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time. Thus, in the prison-litigation cases, the relief sought may be a law library for a prisoner's use in preparing a case, [] or a reader for an illiterate prisoner, []

---

[6] *See infra* at 21-22.

> or simply a lawyer. . .[]  The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future.  The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case [] . . . These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future.

*Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002) (internal citations omitted).  However, there are certain requirements for a prisoner claiming denial of access to courts.  *See, e.g., Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) ("*Lewis v. Casey*[, 518 U.S. 343 (1996)] reaffirmed the right of prisoners to access the courts, but it also tightened the standing requirements for inmates claiming a denial of the right.").  For example, such a prisoner must show he suffered an "actual injury" as a result of the defendant's actions.  *Lewis*, 518 U.S. at 351.  To do so, the "predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope, and it must describe the "lost remedy."  *Christopher*, 536 U.S. at 416-17.  As the Supreme Court explained,

> Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary.  Insofar as the right vindicated by *Bounds* is concerned, "meaningful access to the courts is the touchstone," *id.,* at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

> Such a deferential standard is necessary [] if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.

*Lewis v. Casey*, 518 U.S. 343, 361 (1996) (internal citations omitted).

Here, Bills has done enough to overcome this hurdle at the pleading stage. Defendants argue that to state a claim for denial of access to the courts, a plaintiff must show actual injury, and the "actual injury must be connected to direct pursuit of a non-frivolous direct appeal from a criminal conviction, a habeas corpus petition or a civil rights action under 42 U.S.C. §1983 to vindicate 'basic constitutional rights.'" *Varner v. Bailey*, No. 1:14-CV-999, 2015 WL 5254292, at *4 (W.D. Mich. Sept. 9, 2015), *aff'd* (June 30, 2016) (citing *Lewis,* 518 U.S. at 354). Although Bills may not have met this standard with respect to his 2008 state court lawsuit about which he provides no details, the 2011 lawsuit he was unable to file due to the outstanding 2008 filing fee balance does fit within this standard because it sought to make a due process challenge to the MDOC's determination that Bills is mentally ill and required to receive psychotropic medications he does not wish to take. (Doc. #1 at 21-39). Moreover, it is important to note that Bills' alleged injury results not from MCL 600.2963's general application, but because of certain Defendants' alleged intentional failure to collect the filing fee balance as required by that statute and the 2008 state court Order. *See Campbell v. Mills*, No. 1:16-CV-339, 2016 WL 3027199, at *5 (W.D. Mich. May 27, 2016) ("The mere fact that the prisoner may be required to pay the fee at some time in the future when he has the funds does not in any way discriminate against the prisoner on the basis of his indigency, nor does it deny him access to the courts, as non-indigent persons must pay the filing fee, too. On its face, therefore, § 600.2963 does not impose a constitutional injury. The

only injury occurs if a state judge [or, as alleged here, prison officials] improperly denies a prisoner the right to proceed without prepayment of the filing fee . . .").

Accordingly, the Court cannot conclude that Bills' denial of access to the courts claim should be dismissed wholesale.[7] At the same time, to hold a defendant liable under Section 1983, a plaintiff must first establish that that that particular defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). The plaintiff also must make a clear showing that each defendant was personally involved *in the activity that forms the basis of the complaint. See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior, i.e.*, supervisory liability; rather, a defendant can only be liable under Section 1983 if the plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421. A supervisory official's mere awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger Section 1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Rather, liability under Section 1983 must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

---

[7] As noted above, *supra* at 4-5, n.3, Bills alleges that Corrections Officer Hewitt retaliated against him by destroying and/or confiscating certain legal papers. While Defendants admit that "Prison officials may be found to have impeded a prisoner's right of access to the courts by confiscating and/or destroying the prisoner's legal materials or papers," *Simmons v. Dickhaut*, 804 F. 2d 182, 183-84 (1st Cir. 1986), Bills' amended complaint does not identify Officer Hewitt as a defendant in this action. As this particular claim is targeted only at Officer Hewitt, a non-party to this action, it should be dismissed.

Moreover, the "mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). *See also*, *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (the "'denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.'") (quoting *Shehee*, 199 F.3d at 300); *Lee*, 104 F. App'x at 493 ("Moreover, Lee may not base his claim against the individual defendants upon their denial of his administrative grievances. Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation.")

Here, Bills' allegations make clear that the only defendants who are even potentially liable under these standards for the failure to collect and apply his funds pursuant to the 2008 Order are defendants Diver and Stewart. As to these two defendants, Bills alleges that "Defendant Diver was ARF Business Office Supervisor. He refused to follow the Ingham County Circuit Court Order when he removed money from Plaintiff Bills' Prison Account to pay an institutional debt." (Doc. #67 at ¶43). He also alleges that "Defendant Stewart worked in prisoner accounting at ARF. Stewart had communications with [Bills] about removing money from his trust account and paying filing fees in compliance with the outstanding court [O]rder," but that Stewart refused to do so, instead telling Bills to "[h]ave a family member pay your court costs. ARF has too many lawsuits." (*Id.* at ¶44). Bills alleges that these two defendants acted "with the intent to obstruct [Bills'] right to access the court." (*Id.* at ¶ 46). While these allegations are not very detailed, Bills does clearly allege that "[d]uring the period from 2008, when the court ordered the money paid, up until [he]

filed his original complaint, he received in excess of $400.00, which was more than sufficient to pay the remaining debt of $138.75" to the state court, and, at least at this stage of the case, he has sufficiently identified Diver and Stewart as persons who had the responsibility and/or capability to collect and apply Bills' funds so as to comply with the state court Order.  (Doc. #67 at ¶¶29, 43-46).  Bills should at least be entitled to take discovery into the role these two defendants played, if any, regarding the handling of Bills' funds, particularly insofar as it relates to complying with the 2008 Order and Bills' efforts to satisfy the $138.75 filing fee balance owed thereunder.

As to the other defendants – Webb, Klee, Campbell, and McRoberts – the analysis is different.  Bills merely alleges that he had complained to these defendants about the failure of other prison officials to properly collect and apply his funds, and that he felt that their responses were inadequate and did not help to resolve the problem.  (Doc. #1 at ¶31 ("Defendant Webb [whom Bills alleges is an administrative assistant] told Plaintiff that funds which are owed to the courts will not be forwarded to the courts until institutional debts are paid in full."); ¶¶ 32-34 ("Bills told Defendant Klee what Defendant Webb said . . . Defendant Klee replied: 'You have a very old number . . . who do you think the court will believe, some prisoner or a prison official?"); ¶37 ([] Bills told Defendant Campbell what Defendant Webb said.  Defendant Campbell responded, 'Have a family member pay your court costs.'"); ¶38 ("[] Plaintiff had written communications with Defendant McRoberts.  Initially, McRoberts found in favor of returning the $10 which was taken from Plaintiff.  Later, McRoberts reversed himself and ruled against Plaintiff.")).  As the above-referenced standards make clear, *see supra* at 14-15, such allegations are insufficient to trigger Section 1983 liability.  Accordingly, defendants Campbell, Klee, Webb, and McRoberts are entitled to summary judgment on Bills' denial of access to the courts claim.

Diver and Stewart also argue that Bills' denial of access to the courts claim against them should be dismissed due to his failure to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e) ("PLRA"). The PLRA's exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules[.]" *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

In determining whether a plaintiff has properly exhausted a claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 200 (2007). In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (Doc. #75-2). A prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ B). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.*

at ¶¶ P, V).  The Policy provides that the grievance must include the "[d]ates, times, places, and names of all those involved in the issue being grieved."  (*Id.* at ¶ R).

If the prisoner is dissatisfied with the Step I response, he may appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due.  (*Id*. at ¶ BB).  If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III.  (*Id*. at ¶ FF).  Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps.  (*Id.* at ¶ B).

Defendants Stewart and Diver argue that Bills failed to properly exhaust his administrative remedies against them because the grievance in question (1) improperly grieved multiple issues, and (2) failed to mention defendant Diver.  At least at this stage of the proceedings, the Court finds questions of fact that preclude granting summary judgment on these grounds.

Bills' salient grievance, ARF 1402-346-28C (the "ARF Grievance"), which he unquestionably did exhaust through all three steps of the MDOC's grievance process (Doc. #75-3 at 10, 27-32), explained the issue of his funds not being used to satisfy his 2008 filing fee balance per the state court Order in extremely clear terms, which gave the prison ample opportunity to investigate and address the issue.  (Doc. #75-3 at 30).  However, the ARF Grievance was "rejected" "without processing" because Bills had supposedly raised "more than one (1) issue" in the Grievance.  (*Id.* at 31).  The basis for this rejection was that rather than merely complaining about *ARF's* compliance with the 2008 state court Order, Bills noted in the Grievance that *none* of the MDOC facilities that had housed him since 2008 had complied.  (*Id.*).  There is at least a factual question as to the legitimacy of this denial, as arguably, Bills' ARF Grievance did raise one single *issue* – the alleged failure to comply with the 2008 state court Order – which could only be

prospectively addressed by the prison then in charge of his prison account. *Nelson v. Walsh*, No. 16-10405, 2017 WL 1212836, at *4 (E.D. Mich. Feb. 17, 2017), report and recommendation adopted, No. 16-CV-10405, 2017 WL 1100945 (E.D. Mich. Mar. 24, 2017) ("This raises a question of fact, as an improper rejection would constitute exhaustion . . . The burden is on the defendants to 'show that every reasonable jury would think the rejections were proper.'") (internal citation omitted).

There is also a factual question as to whether Bills' failure to specifically mention Diver in the Grievance violated the requirement that an initial grievance "must include the '[d]ates, times, places and names of all those involved in the issue being grieved." (Doc. #75-2 at ¶R). It is unclear on the present record whether Bills reasonably could have known which ARF accounting office personnel were responsible for managing his funds and complying with the state court Order, and therefore whether his Grievance gave "fair notice" to Diver of Bills' complaint. *Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *6 (E.D. Mich. July 31, 2018), report and recommendation adopted, No. 17-CV-13217, 2018 WL 4501480 (E.D. Mich. Sept. 20, 2018) ("failure to name an individual later sued is not necessarily fatal to a prisoner's suit so long as prison officials had fair notice of the claim raised against the defendant such that there is an opportunity to resolve it."). In light of these questions, and with there being no dispute that Bills did exhaust the ARF Grievance through all three steps of the grievance process, it would be inappropriate to grant summary judgment to defendants Diver and Stewart based on Bills' alleged failure to exhaust his administrative remedies.

### 3. Steece's Motion for Summary Judgment Based on a Failure to Exhaust Should be Denied

In his operative complaint, Bills claims that he was transferred between prisons on March 23, 2017, because of his alleged propensity to file litigation. Specifically, Bills claims that

Defendant Steece, Deputy Warden at Macomb Correctional Facility, transferred him to the Kinross Correctional Facility "because Defendant Campbell and Defendant Webb informed Steece [] [that] Plaintiff likes to file lawsuits. Steece directed officials at Kinross to isolate Plaintiff." (Doc. #67 at 8).[8] In his summary judgment motion, Steece's only specific argument as to this claim is that Bills failed to exhaust it through the MDOC grievance procedures. However, the evidence provided by Steece simply does not permit the Court to make this determination.

As discussed above, before a prisoner can bring a Section 1983 claim against a prison official he must first properly exhaust that claim. Here, Defendants present the affidavit of Carolyn Nelson, MDOC Departmental Analyst, and supporting exhibits, which show that while incarcerated at the MDOC, Bills has taken 35 grievances through the three-step process, and of those, 11 appear to have been filed *after* his March 2017 transfer. (Doc. #75-3). In his summary judgment motion, though, Steece only addresses the 13 older grievances that Bills filed while incarcerated at ARF and MRF. (Doc. #75 at 18). Steece provides no information whatsoever about the grievances Bills filed *after* his transfer in question. Thus, there is no evidence in the record from which the Court can find that Bills failed to exhaust his claim against Steece. Moreover, in his response brief, Bills disputes Steece's assertion that he did not file a Step Three grievance related to his claim, and he claims that discovery will bear this out. (Doc. #77 at 5). Regardless of Bills' assertions, Steece had the burden of showing, through the submission of competent evidence, the absence of a material question of fact on the issue of exhaustion. Because

---

[8] Bills first alleges that he "was transferred from Muskegon (MCF) Correctional Facility in Muskegon, Michigan to Macomb (MRF) Correctional Facility (KCF), in New Haven, Michigan on March 20, 2017, in retaliation for filing grievances in the instant matter. (*Id.*). However, Bills does not argue that any of the named Defendants is responsible for this transfer, and thus this vague and conclusory allegation does not even purport to state a claim against any of them.

he failed to do so, his motion for summary judgment based on Bills' alleged failure to exhaust should be denied.

### 4. Defendants Are Entitled to Eleventh Amendment Immunity as to Bills' Official Capacity Claims, But Are Not Entitled to Qualified Immunity

Defendants also argue that they are entitled to qualified immunity as to all of Bills' claims, and, as to Bills' official capacity claims, Eleventh Amendment immunity. First, Defendants argue that they are entitled to qualified immunity because "Defendants' actions, as described in [Bills'] complaint, did not violate clearly established law." (Doc. #75 at 33). However, Defendants fail to offer any analysis whatsoever as to why this is so, and, as to the one claim they did brief earlier in their motion – denial of access to the courts – for the reasons stated above, there is at least a factual question as to whether defendants Diver and Stewart failed to comply with the 2008 state court Order knowing it would result in denying Bills access to the courts. Accordingly, at least at this stage of the case, the Court cannot find that Defendants are entitled to qualified immunity.

Defendants also argue that they are entitled to Eleventh Amendment immunity as to Bills' official capacity claims against them. On this point they are correct. The Eleventh Amendment provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has held that the Eleventh Amendment proscribes suits against the state by its own citizens, as well as by citizens of another state. *See Employees of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo.* 411 U.S. 279, 280 (1973). Furthermore, the Sixth Circuit has specifically held that MDOC employees are entitled to sovereign immunity from official capacity § 1983 claims. *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010) ("Because sovereign immunity extends to state instrumentalities, and the MDOC is an arm of the State of

Michigan, the MDOC is entitled to sovereign immunity on the § 1983 claim as well.  Moreover, the named Defendants, in their official capacities, are similarly entitled to immunity with respect to [Plaintiff's] § 1983 claim because a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, which is no different from a suit against the State.") (internal citations and quotations omitted).  It is clear, then, that Bills' official capacity claims against the Defendants are barred by sovereign immunity, and summary judgment as to those claims should be granted.

### III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' motion for summary judgment **(Doc. #75)** be **GRANTED IN PART AND DENIED IN PART**.  Specifically, the motion should be **DENIED** as to Bills' denial of access to the courts claim against defendants Diver and Stewart in their individual capacities, and as to Bills' retaliatory transfer claim against defendant Steece in his individual capacity, but should be **GRANTED** in all other respects.


Dated: July 8, 2019                                  s/David R. Grand
Ann Arbor, Michigan                            DAVID R. GRAND
                                                           United States Magistrate Judge


### <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to the action may object to and seek review of the Report and Recommendation, but are required to act within fourteen (14) days of service of a copy thereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with

specificity, will not preserve all the objections a party might have to the Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon the magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 8, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager