UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKEY BILLS,

                Plaintiff,          Civil Action No. 15-11414

v.                             Matthew F. Leitman
                             United States District Judge

PAUL KLEE, *et al.*,            David R. Grand
                             United States Magistrate Judge

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 100)

*Pro se* plaintiff Rickey Bills ("Bills"), an incarcerated person, brings this civil rights action under 42 U.S.C. § 1983, against the following Michigan Department of Corrections ("MDOC") employees:  Renee Diver ("Diver"), Business Office Manager of the Gus Harrison Correctional Facility ("ARF"); Vaughn Stewart ("Stewart"), employee of the ARF accounting office; and Kristopher Steece ("Steece"), Deputy Warden of the Macomb Correctional Facility (collectively, "Defendants").  An Order of Reference was entered on July 26, 2018, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b).  (ECF No. 72).

Presently before the Court is Defendants' motion for summary judgment filed on June 18, 2021.  (ECF No. 100).  Bills filed a response on July 23, 2021, and Defendants filed a reply on August 6, 2021.  (ECF Nos. 112, 114).  On October 29, 2021, the Court held oral argument.  Defendants subsequently filed a supplemental brief, and Bills filed a

supplemental response.  (ECF Nos. 118, 119).

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the Defendants'

Motion for Summary Judgment **(ECF No. 100)** be **GRANTED IN PART AND DENIED**

**IN PART**.

## II.     REPORT

### A.      Brief Factual Background

Bills is a MDOC prisoner who is currently confined at the Macomb Correctional

Facility ("MRF") in Lenox, Michigan.  Following a series of amendments to his complaint

and rulings by the Court, Bills' only remaining claims in his operative second amended

complaint are that (1) Diver and Stewart intentionally interfered with his right to access the

courts; and (2) Steece retaliated against him for filing grievances and lawsuits.

In adopting this Court's prior July 8, 2019 Report and Recommendation that Bills

be allowed to proceed only on the above access-to-courts and retaliation claims (the "July

2019 R&R") (ECF No. 79), the Honorable Matthew F. Leitman summarized the relevant

allegations as follows:

> In summary, Bills' claims stem from an order that the Ingham County
> Circuit Court entered on October 7, 2008, in a lawsuit that Bills had
> filed in that court (the "2008 State Court Order").  In the 2008 State
> Court Order, the Ingham County Circuit Court directed the MDOC to
> "retain 50% of all future deposits of [Bills] until the sum of $138.75 is
> accrued to satisfy" an outstanding filing-fee debt that Bills owed in that
> case.  Bills alleges several of the Defendants refused to comply with the
> 2008 State Court Order, did not retain any funds deposited with the
> MDOC on his behalf, and never attempted to send those funds to the
> Ingham County Circuit Court to extinguish his debt.  Bills says that as
> a result of these failures, he was barred from filing new actions or

appeals in the state courts.  *See* Mich. Comp. Laws § 600.2963(8) ("A prisoner who has failed to pay outstanding fees and costs as required under this section shall not commence a new civil action or appeal until the outstanding fees and costs have been paid").  [] Bills [also] says that Defendants retaliated against him due to his history of filing lawsuits.

While Bills' Second Amended Complaint is not entirely clear, he appears to be bringing the following claims against the following Defendants: [] Bills claims that [Diver and Stewart] interfered with his access to the courts by mishandling money in his prison account and refusing to comply with the directive in the 2008 State Court Order that funds from his prison account be sent to the state court to satisfy his outstanding debt; and [] Bills claims that [Steece] unlawfully retaliated against him for exercising his constitutional right to file lawsuits against prison officials by transferring Bills from the Macomb County Correctional Facility to the Kinross Correctional Facility.

(ECF No. 90, PageID.960-62).  Based on these allegations, Bills seeks, among other relief, declaratory judgment and money damages.  (ECF No. 67, PageID.604-05).

Defendants now move for summary judgment, arguing that Bills failed to raise material questions of fact as to his claims and that they are entitled to qualified immunity. For the reasons discussed below, the Court finds that defendant Steece is entitled to summary judgment on Bills' retaliation claim, but that defendants Diver and Stewart are not entitled to summary judgment on Bills' access-to-the-courts claim.

## B.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (internal quotations omitted).

C.     **Analysis**

1. **Access-to-Courts Claim against Diver and Stewart**

At the heart of this case is Bills' claim that Stewart and Diver unconstitutionally denied him access to the courts by mishandling money in his prison account, in contravention to the 2008 State Court Order, during his confinement at ARF.  His claim is

4

based on well-established law that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  This right of access to the courts includes prohibiting prison officials from erecting barriers that may impede the inmate's access to the courts.  *Resch v. Campfield*, No. 21-cv-293, 2021 WL 4739172, at *12 (W.D. Mich. Oct. 12, 2021) (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)).

In its July 2019 R&R, this Court summarized the relevant details of Bills' access-to-courts claim, which states as follows:

> This action grows out of a state court complaint Bills filed in 2008 in the Ingham County Circuit Court against the MDOC while he was an inmate at ARF.  The Ingham County Circuit Court issued an order on October 7, 2008, advising Bills that he was required to pay an "initial partial filing fee" of $11.25 to maintain his action [].  The [2008 State Court Order] also provided, "Pursuant to MCL 600.2963(5), in addition to payment of the partial filing fee, the [MDOC] is ordered to retain 50% of all future deposits of [Bills] until the sum of $138.75 is accrued to satisfy [Bills'] filing fee obligation."  …  It appears that Bills [paid the] initial partial filing fee, but that the balance of $138.75 was never paid to the state court.

> * * *

> [On] April 27, 2011, [] Bills attempted to file a *new* state court action seeking judicial review of the MDOC's determination that he was "mentally ill and that he is to receive psychotropic medications of which he cannot refuse," but which he "does not want anything to do with . . ."  According to Bills, "the [state] court denied judicial review because of outstanding fees . . ." due on his 2008 state court case.

> * * *

> In his operative complaint in this federal court action, Bills makes various allegations as to why his 2008 state court filing fee balance remains unpaid.  Bills alleges that between the time he filed the state court complaint in 2008 and the time he filed the instant action, "he received in excess of $400.00, which was more than sufficient to pay the remaining debt of $138.75" that he owed to the state court in

> connection with his 2008 case. … [H]e lays the actual blame on
> Defendants Diver and Stewart for failing to use his funds to pay his
> outstanding state court debts.  Specifically, he alleges that Diver was
> ARF's Business Office Supervisor[], and that he "refused to follow the
> [2008 State Court Order] when he removed money from [] Bills' Prison
> Account to pay an institutional debt," and that Stewart "worked in
> prisoner accounting at ARF," but told Bills to "[h]ave a family member
> pay your court costs."
>
> * * *
>
> Regardless of the merits of Bills' assertions about *why* his 2008 filing
> fee balance has not been paid, the bottom line is that: (1) his 2008 case
> was never heard (and apparently has been stayed for more than a
> decade); and (2) because that state court "debt" from that 2008 case
> remains unsatisfied, Bills has been prevented [to this day] from filing
> other state court litigation, such as the case he tried to file in 2011
> challenging the MDOC's determination that he was mentally ill.

(ECF No. 79, PageID.788-92) (citations omitted).

In their summary judgment motion, Defendants argue primarily that Bills' access-

to-courts claim fails, as a matter of law, because he "cannot show an actual injury by

Stewart or Diver's actions in 2013."  (ECF No. 100, PageID.1301).  To state a viable

access-to-courts claim, a prisoner must show he suffered an "actual injury" as a result of

the defendant's actions.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The Supreme Court

has strictly limited the types of cases for which an "actual injury" exists:

> *Bounds* does not guarantee inmates the wherewithal to transform
> themselves into litigating engines capable of filing everything from
> shareholder derivative actions to slip-and-fall claims.  The tools it
> requires to be provided are those that the inmates need in order to attack
> their sentences, directly or collaterally, and in order to challenge the
> conditions of their confinement.  Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional)
> consequences of conviction and incarceration.

*Id.* at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas

corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (*en banc*).

Moreover, to give rise to an actual injury, the underlying action must assert a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (stating that under *Lewis*, an actual injury includes the requirement that the underlying action be non-frivolous). The Supreme Court has squarely held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."

As an initial matter, Defendants seek summary judgment based on the same argument they relied on at the dismissal stage, which this Court addressed and rejected in its July 2019 R&R. (ECF No. 79, PageID.797 ("Defendants argue that Bills was not denied access to the courts, as a matter of law, because his 'Second Amended Complaint is silent as to whether he suffered an "actual injury"'[.]"). In rejecting that argument, this Court explained:

> It appears [from the record] that Bills timely [] paid the partial filing fee, and that he has attempted ever since to pay off the $138.75 filing fee balance, but that, for whatever reason – whether due to Bills' own spending habits, the allocation of his deposits to balances owed directly to the MDOC, or something else – that balance has, to this day, remained unpaid. Evidence in the record suggests that this prevented Bills not only from pursuing his 2008 state court case, but also a 2011

7

action he tried to commence in order to challenge the MDOC's determination that he was mentally ill and was required to be administered psychotropic drugs that he did not wish to take.

\* \* \*

[] Bills has done enough to overcome [the actual injury] hurdle at the pleading stage.  Defendants argue that to state a claim for denial of access to the courts, a plaintiff must show actual injury, and the "actual injury must be connected to direct pursuit of a non-frivolous direct appeal from a criminal conviction, a habeas corpus petition or a civil rights action under 42 U.S.C. §1983 to vindicate 'basic constitutional rights.'"  *Varner v. Bailey*, No. 1:14-CV-999, 2015 WL 5254292, at *4 (W.D. Mich. Sept. 9, 2015), *aff'd* (June 30, 2016) (citing *Lewis,* 518 U.S. at 354).  Although Bills may not have met this standard with respect to his 2008 state court lawsuit about which he provides no details, the 2011 lawsuit he was unable to file due to the outstanding 2008 filing fee balance does fit within this standard because it sought to make a due process challenge to the MDOC's determination that Bills is mentally ill and required to receive psychotropic medications he does not wish to take.  Moreover, it is important to note that Bills' alleged injury results not from MCL 600.2963's general application, but because of certain Defendants' alleged intentional failure to collect the filing fee balance as required by that statute and the [2008 State Court Order].  *See Campbell v. Mills*, No. 1:16-CV-339, 2016 WL 3027199, at *5 (W.D. Mich. May 27, 2016) ("The mere fact that the prisoner may be required to pay the fee at some time in the future when he has the funds does not in any way discriminate against the prisoner on the basis of his indigency, nor does it deny him access to the courts, as non-indigent persons must pay the filing fee, too.  On its face, therefore, § 600.2963 does not impose a constitutional injury.  The only injury occurs if a state judge [or, as alleged here, prison officials] improperly denies a prisoner the right to proceed without prepayment of the filing fee . . .").  Accordingly, the Court cannot conclude that Bills' denial of access to the courts claim should be dismissed [as to Diver and Stewart].

\* \* \*

As to these two defendants, Bills alleges that "Defendant Diver was ARF Business Office Supervisor.  He refused to follow the [2008 State Court Order] when he removed money from Plaintiff Bills' Prison Account to pay an institutional debt."  He also alleges that "Defendant Stewart worked in prisoner accounting at ARF.   Stewart had

communications with [Bills] about removing money from his trust account and paying filing fees in compliance with the outstanding court [O]rder," but that Stewart refused to do so, instead telling Bills to "[h]ave a family member pay your court costs.  ARF has too many lawsuits."  Bills alleges that these two defendants acted "with the intent to obstruct [his] right to access the court."  While these allegations are not very detailed, Bills does clearly allege that "[d]uring the period from 2008, when the court ordered the money paid, up until [he] filed his original complaint, he received in excess of $400.00, which was more than sufficient to pay the remaining debt of $138.75" to the state court, and, at least at this stage of the case, he has sufficiently identified Diver and Stewart as persons who had the responsibility and/or capability to collect and apply Bills' funds so as to comply with the [2008 State Court Order].  Bills should at least be entitled to take discovery into the role these two defendants played, if any, regarding the handling of Bills' funds, particularly insofar as it relates to complying with the [2008 State Court Order] and Bills' efforts to satisfy the $138.75 filing fee balance owed thereunder.

(ECF No. 79, PageID.797-802).

As detailed above, the Court made clear that the allegations in Bills' operative complaint raised factual questions as to whether Diver and Stewart failed to comply with the 2008 State Court Order, knowing it would result in denying Bills access to the courts, and in particular his ability to pursue his due process claim in the 2011 lawsuit which had been rejected due to his unpaid filing fees from the 2008 case.  (*See also* ECF No. 79, PageID.807).  Defendants acknowledge this much in their summary judgment briefs.  (ECF No. 100, PageID.1031 ("Bills has alleged that Stewart and Diver denied him access to court, arising out of Bills' [] 2011 state court filings"); ECF No. 114, PageID.1260 ("This Court previously determined that Bills has only plausibly stated access to courts claims arising out of Bills' 2011 state court case.")).  However, they do not argue that Bills' inability to pursue his 2011 lawsuit is insufficient to constitute an "actual injury," nor do

they deny that Stewart and Diver were responsible for and capable of collecting and applying Bills' funds in compliance with the 2008 State Court Order during the time they controlled Bills' prisoner trust account at ARF.  (*See* ECF No. 100, PageID.1030 ("Stewart and Diver's duties involving Bills would have started after November 19, 2013, as they work in the business office at ARF"), PageID.1031 (stating that 2011 was "two years before the *Defendants had any control of Bills' MDOC prisoner trust account*") (emphasis added).

Despite bearing the initial burden on their summary judgment motion, Defendants did not even address the factual questions surrounding Stewart's and Diver's compliance with the 2008 State Court Order, let alone present evidence establishing their compliance.[1] *See Celotex Corp.*, 477 U.S. at 325; *Alexander*, 576 F.3d at 558.  Instead, they attempt to circumvent that critical issue altogether by arguing simply that "Bills' [] 2011 state court claims were dismissed before Bills was transferred to ARF in [November 19, 2013], [so] any actions or inactions by Stewart or Diver did not prevent Bills from bringing these claims to court."  (ECF No. 100, PageID.1031).  In other words, Defendants' argument is that "Bills cannot meet the first required element" of showing that *Stewart or Diver* caused any of the "actual injury" related to Bills' inability to pursue his 2011 lawsuit because "[a]ll Bills alleges is that he could not file a state court action in 2011, two years before [Stewart and Diver] had any control of Bills' MDOC prisoner trust account."  (*Id.*).

---

[1] Defendants attach to their summary judgment motion (1) a May 2009 Order from Ingham County Circuit Court resolving the 2008 lawsuit at the trial level; (2) Bills' MDOC confinement history; (3) three pages of select portions of Bills' deposition testimony; and (4) Bills' transfer paperwork.

This argument is misguided, as it overlooks that Bills' claim is not merely that he was unable to file his 2011 lawsuit *in 2011*; his claim is also that he has been ***continually prevented from pursuing his 2011 lawsuit*** due to his outstanding filing fee balance, in part because, according to Bills, ***Stewart and Diver*** "refused to follow the [2008 State Court Order]" during the time they controlled his prisoner trust account at ARF between November 19, 2013, and April 15, 2014.  (ECF No. 67 at ¶¶ 43-46).[2]  Again, Stewart and Diver did not present evidence showing the absence of a material fact as to Bills' contention.  At any rate, as discussed below, viewing the record and drawing all reasonable inferences in the light most favorable to Bills, there remain significant questions of material fact as to whether Stewart and Diver intentionally refused to comply with the 2008 State Court Order in an effort to prevent Bills from being able to pursue his 2011 lawsuit (or any others for that matter) in state court during his time at ARF.

> i.   *Defendants' argument that they could not have been personally involved in preventing Bills from pursuing his 2011 lawsuit during his time at ARF lacks merit*

Defendants' argument that Stewart and Diver could not be "personally involved" in Bills' access-to-courts claim based on the 2011 lawsuit appears to presume that Bills was only prevented from filing that lawsuit in 2011, but this is disputed by the record, which contains evidence of Bills' continued attempts over many years to pursue his lawsuits in state court, despite the fact that he has continually been prevented from doing so due to his outstanding filing fee from 2008.  For example, in his deposition on April 20, 2021, Bills

---

[2] The Court thoroughly addressed this point in its July 2019 R&R.  (*See* ECF No. 79, PageID.792-801).

testified that:

> [T]he Department of Corrections [was] supposed to have been taking 50 percent of any money that go into my account and send it to the courts and they wasn't doing that.  And for like over eight years they wasn't doing it, like they collect some money but they didn't forward it to the courts.  ***And I filed several other attempts to go back in the state court and they wouldn't let me come back in because the outstanding debt they say I owe for the lawsuit***.
>
> * * *
>
> Like the complaint didn't start[] with [ARF], it started way before that, but ***[ARF] was the only one who attempted to not – they just took the money.  They didn't pay the courts, but they took the money for – that I owed to the*** . . .[3]

(ECF No. 100-4, PageID.1055-56).  Viewed in the light most favorable to Bills, this select testimony does not preclude a reasonable inference that his "several attempts to go back in the state court" over a span of "eight years" included attempts to file his 2011 lawsuit.

Such an inference is further supported by evidence that Bills' pursuit of his 2011 lawsuit did not stop (as Defendants suggest) after his "filing was rejected due to his outstanding filing fees" in May 2011.  (ECF No. 100, PageID.1030).  Specifically, there is no dispute that the record contains a letter from the Ingham County Circuit Court dismissing Bills' 2011 lawsuit on May 3, 2011, stating, "The Court is returning your petition for judicial review and accompanying documents.  Your request to suspend the

---

[3] The deposition testimony cuts off at this point because Defendants only attach to their motion *select portions* of Bills' deposition testimony, specifically pages 10, 11, and 14.  (ECF No. 100-4, PageID.1055-57; *see also* ECF No. 112, PageID.1176 (Bills' response brief arguing that Defendants' exhibit of his deposition is "full of bias and prejudice [because] they are intentionally leaving out [] facts" and "skipped over" parts)).  As such, it is unclear which lawsuit(s) Bills is referring to when stating that he "filed several other attempts to go back in the state court" for "over eight years."  (*Id.*, PageID.1055).  Although Bills later refers to the 2008 lawsuit, these select portions provide insufficient context to draw any conclusions.

$150.00 filing fee cannot be honored because you currently owe outstanding fees in the following case file for the amount shown: [Case No.] 08-1375-AA ($138.75)." (ECF No. 18, PageID.200). But a *subsequent* letter from the Ingham County Circuit Court dated June 17, 2011, states:

> Your "Motion for Reconsideration with Memorandum of Law Incorporated Therein" was forwarded to me for review. You claim the Court refused to allow you to file an action, and that you are being "penalized . . . for something that the [MDOC] is responsible for, namely the collection of filing fees and court costs from prisoners in its custody." (Motion for Reconsideration at 2.) [sic] Your issues should be addressed with the department of corrections. I suggest you contact your facility's business office to arrange for payment of the outstanding $138.75 to be forwarded to the Court accordingly. As for your motion, reconsideration will not be entertained. . . .

(*Id.*, PageID.199; ECF No. 1, PageID.14).[4]

This June 2011 letter is direct evidence of Bills' continued efforts to pursue his 2011 lawsuit ***after its initial rejection*** via a motion for reconsideration. Moreover, as the letter instructs, Bills has for years thereafter attempted to "contact [his] facility's business office" – which at ARF meant Stewart and Diver – "to arrange for payment of the outstanding $138.75 to be forwarded to the Court," which was a prerequisite to being "allow[ed]" to finally file his 2011 lawsuit.[5] Defendants do not address this point, much less present any

---

[4] *See also* ECF No. 1, PageID.15, 18-27 (exhibits to Bills' Motion for Reconsideration of the court's "refusal to allow Petitioner to proceed *in forma pauperis* under letter dated May 3, 2011" in pursuit of his 2011 lawsuit in *Bills v. Michigan Dep't of Corrections, Richard M. McKeon, Director*, which includes a copy of the "Petition for Judicial Review of a Decision by the Hearings Divisions of the [MDOC]" filed on April 27, 2011, seeking to challenge the MDOC's determination that "Bills is indeed mentally ill and that he is to receive psychotropic medications of which he cannot refuse").

[5] It is worth noting that *nearly 10 years after the 2008 State Court Order*, Bills was *still* attempting to pay off the outstanding filing fee for his 2008 case. (*See* ECF No. 112, PageID.1224-27) (Letters

evidence to support their apparent assumption that Bills altogether stopped pursuing his

2011 lawsuit after its rejection and thus could not involve Stewart or Diver.

Indeed, Bills' response brief expressly refers to these letters rejecting his 2011

lawsuit due to his outstanding filing fee balance from the 2008 case, arguing that:

> Defendants failed to follow [the 2008 State Court Order] concerning the
> payment of a filing fee as well as state court letters dated May 3, and
> June 17, 2011. The statute of limitation is three (3) years for civil rights
> suits filed in Michigan. Plaintiff filed his original complaint on April
> 9, 2015, because he was prohibited by Defendants at [ARF] from filing
> his lawsuits while at [ARF]. The Court should not grant summary
> judgment for the Defendants because they has been in violations of
> [Bills'] protected constitutional rights of access to the court by refusing
> to pay the filing fees as the courts has ordered them to do. . . .

(ECF No. 112, PageID.1173). While perhaps inartfully pleaded, it is clear that Bills'

access-to-court claim *against Stewart and Diver* is premised on his continued prevention

from pursuing his 2011 lawsuit "while at ARF" before the "statute of limitations" ran out

for his claim.[6]

---

from Ingham County Circuit Court in *February 2018* stating that "partial payment [for Bills'
outstanding filing fee in Case # 08-1375-AA] has been made but it is not paid in full. There is a
remaining balance of $113.90. The court has received 2 payments totaling $36.10. The first was
receipted on 10/17/08 for $11.25 and was remitted by [MBP]. The second was receipted on
03/17/17 for $24.85 and was remitted by the State of MI.")).

[6] While not the subject of this Report and Recommendation, Defendants' response to Bills'
pending motion to amend his complaint confirms this point. (*See* ECF Nos. 102, 105).
Specifically, in seeking denial of Bills' request to amend his complaint to "include the allegations
from his 2011 state court filing contesting the determination to give Bills psychotropic drugs,"
Defendants argue that "[t]he amendments sought by Bills are barred by Michigan's three-year
statute of limitations for personal injury claims. *See e.g. McCune v. City of Grand Rapids*, 842
F.2d 903, 905 (6th Cir.[] 1988)" because "[f]ederal civil rights claims in Michigan are governed
by Michigan's three year personal injury statute of limitations, MCL § 600.5805(10). *Chippewa
Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004)." (ECF No. 105, PageID.1118-19).
According to Defendants, Bills' 2011 state court claim accrued on either March 2, 2011 (the date
MDOC determined Bills needed psychotropic drugs), or at latest, April 27, 2011 (the date Bills

Based on the above, Defendants' conclusory assertion that the 2011 lawsuit is unrelated to Stewart and Diver is without merit, as it is undisputed that Bills was continually prevented from pursuing his 2011 lawsuit during the time Stewart and Diver controlled his prison trust account at ARF.

> *ii. Defendants fail to show the absence of a genuine dispute of material fact as to whether Stewart and Diver intentionally failed to comply with the 2008 State Court Order*

Because Defendants rely on their misguided argument that Diver and Stewart could not have prevented Bills from pursuing the 2011 lawsuit after its initial dismissal in 2011, they do not meaningfully address the salient issue regarding their alleged non-compliance with the 2008 State Court Order. However, as this Court made clear in its July 2019 R&R, "there is at least a factual question as to whether defendants Diver and Stewart failed to comply with the [2008 State Court Order] knowing it would result in denying Bills access to the courts." (ECF No. 79, PageID.807). Defendants, as the moving party bearing the initial burden, fail to present evidence resolving that question.[7] On this basis alone,

---

first filed his 2011 lawsuit). (*Id.*, PageID.1119-20). Their argument recognizes that, from a statute of limitations perspective, Bills *had until at least March 2, 2014* (*or at the latest until April 27, 2014*) to file his 2011 lawsuit, which overlaps by *three to five months* with Bills' time at ARF when *Stewart and Diver* were in charge of his prisoner account. And without regard to its merits, Defendants themselves contend that Bills is now barred from pursuing his 2011 state court claim – in either state or federal court. *See Christopher*, 536 U.S. at 415 (requiring plaintiff to plead a "lost remedy").

[7] Bills also contends that Stewart's and Diver's intentional refusal to comply with the 2008 State Court Order resulted in his inability to bring his "two [] state court cases," (the 2008 and 2011 lawsuits), as well as "three" other state court claims arising out of incidents at ARF, which he contends he was forced to pursue in federal court instead in Case Nos. 15-11415, 15-11416, and 15-11417 (the "Federal Cases"), because "every attempt[]" to file these cases in state court while at "ARF" was "blocked." (ECF No. 112,). While Defendants are correct that these Federal Cases cannot serve as underlying actions for purposes of his specific access-to-courts claim in the instant

Defendants fail to show that they are entitled to summary judgment.

It is also worth noting that, in their supplemental brief, Defendants effectively concede that Diver and Stewart were aware of their obligations under the 2008 State Court Order when they argue (for the first time) that "Diver and Stewart, along with other MDOC employees, followed Judge Collette's order to collect the fee." (ECF No. 118, PageID.1310). However, a fair reading of Judge Collette's order issued on January 30, 2014, cannot be said to establish *Stewart's and Diver's* compliance with the 2008 State Court Order.

Specifically, Judge Collette's order – which this Court previously detailed in its July 2019 R&R (ECF No. 79, PageID.790) – states:

> This matter comes before the Court on [Bills'] Motion to Dismiss Debts consisting of Petitioner's filing fee in this matter. [Bills] argues that this Court has failed to act to collect said filing fee in the amount of $138.75 as ordered to be collected from [Bills'] prisoner account by the [MDOC]. [Bills'] argument is without merit. [Bills'] trust account statement demonstrates that the [MDOC] has been collecting the filing fee. The [MDOC] has not sent the fees paid to this Court because this Court's Order requires that the fee be sent when the entire amount of $138.75 has accrued, which has not yet occurred.

(ECF No. 118, PageID.1315). This language merely states in broad terms that an

_____

case (ECF No. 114, PageID.1261-62), they can be considered as evidence of Stewart's and Diver's non-compliance with the 2008 State Court Order and its apparent effectiveness in preventing Bills from filing *multiple* lawsuits in state court during the time they controlled his prison trust account at ARF. *See, e.g.,* (*Bills v. Romanowski, et al.*, Case No. 15-11417, ECF No. 15 (appeal of summary dismissal in No. 15-11417, in which the Sixth Circuit determined that "§ 1983 is not a remedy for addressing the taking of property if the state provides a post-deprivation remedy. … Although Bills contends in his appellate brief that he is precluded from filing pleadings in the Michigan courts as the result of unpaid fees, Bills made no such claim in his complaint; thus, his argument will not be considered for the first time on appeal."); *Bills v. Heyns, et al.* Case No. 15-11415, ECF No. 6 (dismissing a claim of due process at a misconduct proceeding in part because "Plaintiff has an adequate remedy in the state courts")).

unspecified "trust account statement" showed that the "MDOC" had been collecting an undisclosed amount of filing fees. But there is no dispute here that Bills had submitted, as part of his original complaint, copies of certain trust account statements showing at least some amount of collection for filing fees at earlier MDOC facilities other than ARF.[8] Because the salient issue *in this case* is *Stewart's and Diver's compliance* with the 2008 State Court Order, Defendants had the initial burden to present account statements or other competent evidence demonstrating that they collected filing fees *at ARF*.[9] They fail to do so here.

Finally, while Defendants' failure to meet their initial burden is, by itself, fatal to their request for summary judgment, it is worth noting that Bills has presented evidence raising further questions as to Diver's and Stewart's alleged *intentional* refusal to comply with the 2008 State Court Order. Specifically, Bills argues that Diver and Stewart

---

[8] Bills submitted account statements reflecting that: (1) between "4/27/2010 to 4/27/2011," the Marquette Branch Prison ("MBP") collected and paid $10.00 for "Court Ordered Charges Obligation" related to Case No. "08-1375-AA," which reduced the "Original Amount" owed of $138.75 to "[$]128.75" (*id.*, PageID.41); (2) on "03/12/2011" and "03/29/2011" the Ionia Correctional Facility ("ICF") credited "Court Order Charges Payable" credits of $10 for each day (ECF No. 1, PageID.42); and (3) on "08/09/2013," the Macomb Correctional Facility ("MCF") collected "[$]0.93" for "Court Ordered Charges Payable" from a "[$]20.00" JPay debit deposit into his account from "Ridgeway, Linda."[8] (*id.*, PageID.43). While unclear whether Judge Collette considered some, all, or none of these statements in concluding that the MDOC was complying with his 2008 Court Order, it is clear that none of these account statements indicate a collection of court-ordered filing fees *from ARF*.

[9] To the extent Defendants argue that any amount of collected filing fees could not be sent piecemeal until accrual of the total amount owed of $138.75, not only do Defendants fail to present evidence of the amount collected thus far, their argument is disputed by the record, which includes, for example, a Step III Grievance Response at MBP dated December 29, 2008, stating, "As a result of the Step One grievance, the payment method was corrected and the *$22.50 which was being held was forwarded* to the [Ingham County] Circuit Court on 7-24-08." (ECF No. 112, PageID.1201) (emphasis added).

continually "rejected payments" meant to satisfy his "outstanding debt to the court" from his "Aunt" Linda Ridgeway under a guise that MDOC Policy only allowed inmates to receive payments from "family members," even though they "never proved that [his] Aunt [] Linda L. Ridgeway was not [his] Aunt." (ECF No. 112, PageID.1167-68, 1183). In support of his argument, Bills submits a copy of an MDOC "Telephone Agreement and Number List," which lists "Ridgeway, Linda" as "Aunt/Family" and was approved, at least at one point, by a prior MDOC facility on October 9, 2001. (ECF No. 119, PageID.1360).[10] Viewing the evidence and drawing reasonable inferences in the light most favorable to Bills, at least one MDOC facility previously recognized Linda Ridgeway as Bills' aunt, and Defendants' silence on this issue raises another material question of fact as to whether Stewart and Diver intentionally misapplied MDOC policy as a guise for preventing Bills from paying off his 2008 filing fee.

In short, "the summary-judgment burden is initially on the moving party to establish that there is an absence of a genuine issue of material fact as to an essential element of the claim, before the non-moving party must present sufficient evidence from which a jury could reasonably find for him." *Smith v. Weers*, No. 17-1504, 2018 WL 2087122, at *4 (6th Cir. Jan. 2, 2018). Here, Defendants offered no evidence establishing Stewart's and

---

[10] The record also contains an "Administrative Hearing Report" acknowledging that Bills "showed me a copy of [] a telephone list dated 10/9/2001 listing Linda Ridgeway as his Aunt," and goes on to state, "I determined that Linda Ridgeway as defined in PD 04.02.102 isn't a family member of prisoner Bills [] and the funds dated 12/11/13 and 8/8/13 total amount $40.00 to be returned to the sender at the prisoner[']s expense." (ECF No. 112, PageID.1197). However, this report only reflects the Hearing Officer's conclusion, but does not provide any details demonstrating that this conclusion was correct. Defendants otherwise offer no evidence of a lack of familial relationship.

Diver's role "regarding the handling of Bills' funds, particularly insofar as it related to complying with the [2008 State Court Order] and Bills' efforts to satisfy the $138.75 filing fee balance owed thereunder" during the time they controlled his prison trust account at ARF. Thus, the question still remains whether Stewart and Diver intentionally failed to comply with the 2008 State Court Order knowing it would prevent Bills from filing any lawsuits, including his 2011 lawsuit.

Finally, under the Defendants' logic, an inmate's ability to file a lawsuit could be effectively extinguished by a regular changing of the personnel responsible for collecting inmate filing fees and transmitting them to the court. The Court cannot countenance such an absurd result.

For all of the foregoing reasons, defendants Stewart and Diver are not entitled to summary judgment on Bills' access-to-the-courts claim.

### iii.    *Defendants are not entitled to qualified immunity*

Defendants also argue that they are entitled to qualified immunity because their "actions, as described in [Bills'] complaint, did not violate clearly established law," as "Stewart and Diver did not interfere with Bills' access to court because he did not suffer an actual injury by Stewart or Diver when the alleged, nonfrivolous claims were dismissed prior to Stewart or Diver having any authority over Bills' account." (ECF No. 100, PageID.1039). As discussed above, however, this argument lacks merit because it is undisputed that Stewart and Diver controlled Bills' account during his time at ARF from November 2013 to April 2014, during which Bills was still prevented from pursuing his 2011 lawsuit due to the outstanding filing fee in the 2008 case.

Moreover, Bills has a "clearly established right of access to the courts for [the] constitutional claims related to [his] incarceration" at issue in his 2011 lawsuit. *Thaddeus-X v. Blatter*, 175 F.3d at 396 ("a consistent line of Supreme Court precedent indicates that prisoners retain a right to access the courts and that prison management cannot interfere with that right.").[11] As the Sixth Circuit explained, "[W]e find to be well-established and firmly rooted in the language of Supreme Court's opinions" that "states may not erect barriers that impede the right of access of incarcerated persons. This principle is illustrated in several cases." *John L. v. Adams*, 969 F.2d 228, 235 (6th Cir. 1992). Among other cases, the Sixth Circuit cited to *Jackson v. Procunier*, 789 F.2d 307, 310-11 (5th Cir. 1986), and explained:

> Similarly, in [*Jackson*], the plaintiff [] alleged that prison mailroom personnel deliberately delayed his mail and that this resulted in the dismissal of his state court appeal in a civil lawsuit. In reversing the district court's dismissal of plaintiff's action, the Fifth Circuit reaffirmed its position that the right of access extends to general civil matters. In so ruling, the court held, "If Jackson has alleged a deliberate *denial* of his right of access to *pursue* his civil appeal, he has alleged the deprivation of a substantive constitutional right found in the first amendment, as well as a potential deprivation of substantive and procedural due process." [*Jackson*,] 789 F.2d at 311 (emphasis supplied). ***Thus, the court's holding rested on the alleged existence of a barrier that state officials had created, which caused interference with plaintiff's access to the state court system.***

*John L.*, 969 F.2d at 235 (emphasis added).

While Stewart and Diver were not responsible for the initial filing fee debt Bills

---

[11] Defendants do not address whether Stewart's or Diver's conduct violated a constitutional right, but there is no dispute that an intentional refusal to comply with the 2008 State Court Order for the sole purpose of preventing Bills' from pursuing his due process claim in the 2011 lawsuit would be a constitutional violation of right to access the courts.

incurred from the 2008 lawsuit, their allegedly intentional non-compliance with the 2008 State Court Order during his time at ARF – for the purpose of preventing Bills from pursuing his 2011 lawsuit and others – is clearly a barrier they erected that impeded Bills' right of access to the courts.[12]   Accordingly, on this record, the Court cannot find that Defendants are entitled to qualified immunity.   *See also Siggers-El v. Barlow*, 412 F.3d 693, 703 (6th Cir. 2005) ("As the Supreme Court has explained, an official can still be on notice that [his] conduct violates established law even in novel factual circumstances.   In essence, we will impose liability (and only impose liability) when a public-official defendant knew or should have known of the constitutionally violative effect of his actions.") (citations and quotations omitted).[13]

## 2.   Retaliation Claim against Steece

As to his retaliatory transfer claim, Bills alleges that Steece, the Deputy Warden at MRF, transferred him from MRF to Kinross Correctional Facility ("KCF") on March 23, 2017, "because [ARF Deputy Warden] Campbell and [ARF Administrative Assistant]

---

[12] (*See also*, *e.g.*, ECF No. 112, PageID.1169 ("Diver told me to[] my face [] that he was not worr[ied] about me filing any 'lawsuits' because [] I could not file anymore civil action until I pay the rest of the state court what I owe[] them[] and that he [is] not going to pay anything out of my account"); PageID.1179 ("[Stewart] also said that . . . if I drop the lawsuit that they . . . will see that all of state court filing fees are pa[i]d.")).

[13] It bears repeating that this Court found in its July 2019 R&R that "there is at least a factual question as to whether defendants Diver and Stewart failed to comply with the [2008 State Court Order] knowing it would result in denying Bills access to the courts.  Accordingly, at least at this stage of the case, the Court cannot find that Defendants are entitled to qualified immunity."  That factual question remains unanswered at the summary judgment stage because Defendants failed to address Diver's and Stewart's non-compliance with the 2008 State Court Order, much less present evidence establishing that their non-compliance was not a "deliberate *denial* of [Bills'] right of access to *pursue* his [2011] lawsuit."  *John L.*, 969 F.2d at 235 (emphasis in original).

Webb informed Steece" that "[Bills] likes to file lawsuits."  (ECF No. 67, PageID.604).

He also asserts that Steece "directed officials at [KCF] to isolate [Bills]."  (*Id.*).

In order to establish a claim for First Amendment retaliation, a plaintiff must show

that: (1) he engaged in constitutionally protected conduct; (2) an adverse action was taken

against him that would deter a person of ordinary firmness from continuing to engage in

that conduct; and (3) there is a causal connection between the protected conduct and the

adverse action.  *Kennedy v. City of Villa Hills*, 635 F.3d 210, 217 (6th Cir. 2011) (citing

*Thaddeus-X*, 175 F.3d at 394).  In this case, Defendants do not dispute that Bills' "filing of

lawsuits and grievances are protected conduct under the First Amendment."  (ECF No.

100, PageID.1034).  However, they assert that Bills cannot meet the second or third prongs

of his First Amendment retaliation claim.  For the reasons stated below, the Court agrees.

> i.  *Adverse Action*

The second prong of Bills' retaliation claim requires him to show he suffered an

adverse action.  Defendants argue that a retaliatory transfer from MRF to KCF "does not

rise to the level of an adverse action" because "a prisoner transferred from [MRF] to [KCF]

does not lose any rights or privileges as they are transferred at the same security level," and

that Bills has not otherwise shown that this transfer "caused him any undue hardship that

is atypical for a prisoner."  (ECF No. 100, PageID.1034-35).

Courts have held that, "[a]s a general matter, a prison official's decision to transfer

a prisoner from the general population of one prison to the general population of another

is not considered adverse."  *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013).  In

other words, "[s]ince prisoners are expected to endure more than the average citizen, and

since transfers are common among prisons, ordinarily a transfer would not deter a person of ordinary firmness from continuing to engage in protected conduct." *Siggers-El*, 412 F.3d at 701. Only when a transfer results in more restrictions – such as an increased security level or limited access to the courts – does it potentially rise to the level of an adverse action. *See, e.g., Siggers-El*, 412 F.3d at 702 (finding that transfer could constitute adverse action where plaintiff "also suffered a number of foreseeable consequences that inhibited [his] ability to access the courts"); *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (transfers that "result in more restrictions and fewer privileges for prisoners are considered adverse"); *King v. Zamiara*, 680 F.3d 686, 697 (6th Cir. 2012) (adverse action where prison officials increased the plaintiff's security level from II to III by transferring between prisons). In light of this, "a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to that particular prisoner." *Hill*, 630 F.3d at 474 (citing *Siggers-El*, 412 F.3d at 701-02). If a prisoner cannot show such "foreseeable consequences," the retaliation claim fails as a matter of law. *See Siggers-El*, 412 F.3d at 704.

In support of their motion, Defendants submit a record of Bills' MDOC confinement history. (ECF No. 100-3). This shows that, on April 15, 2014, Bills was transferred from ARF to Oaks Correctional Facility. (*Id.*, PageID.1050). From there, he was transferred to Muskegon Correctional Facility on October 21, 2014. (*Id.*, PageID.1049-50). On April 7, 2016, he was transferred to MRF (a Level II facility) and placed in "General Population." (*Id.*, PageID.1049). On March 21, 2017, Bills was transferred from MRF to St. Louis

23

Correctional Facility ("SLF") for two days.  (*Id.*, PageID.1049).[14]  On March 23, 2017, he was transferred from SLF to KCF (also a Level II facility) and placed in "General Population."  (*Id.*).  Finally, on May 4, 2017, Bills was transferred from KCF to URF and placed in "Detention (Punitive Segregation)" for approximately two months.  (*Id.*).

Defendants also submit salient paperwork regarding Bills' transfer.  (ECF No. 100-5).  A Transfer Order dated March 20, 2017, from MRF to KCF shows checked boxes assessing "Confinement Level" of "II"; "Management Level" of "I"; "No" for "Special Handling"; but no checked boxes next to "Segregation."  (*Id.*, PageID.1059).  The Transfer Order also lists "B. Haynie" under "Approver Notes," and contains two signatures at the bottom of the page, including one from the MRF Inspector, but neither of which are from Steece.  (*Id.*).  Similarly, a separate Security Classification Screen dated and signed "3/20/2017" lists Bills' "Confinement Level" as "II," "Management Level" as "I," and contains two approval signatures from the MRF Inspector.  (*Id.*, PageID.1060).

Based on the evidence above, Defendants have met their initial burden to demonstrate that Bills' transfer from MRF to KCF was not an "adverse action."  All of the salient MDOC paperwork reflect that Bills was kept at the same security level of II and transferred "from the general population of [MRF] to the general population of [KCF]."  *LaFountain*, 716 F.3d at 948; *see also King*, 680 F.3d at 697.  Moreover, there is no evidence supporting Bills' assertion that Steece ordered him to be "isolated" upon his

---

[14] In his response to Defendants' motion, Bills explains that when he was being transferred from MRF to KCF, he was held at SLF "for two days" as part of a standard "layover" because SLF is "a transfer holding center for more than (30) transportation buses to transfer prisoners …."  (ECF No. 112, PageID.1174-75).

transfer, as both the transfer paperwork and record of confinement history reflect Bills was placed in general population at KCF.  Finally, while Bills raised an access-to-courts claim related to his time *at ARF*, he has not alleged, much less provided competent evidence, that his ***transfer from MRF to KCF*** somehow affected his ability to access the courts or deterred him from filing additional lawsuits/grievances.  *See Siggers-El*, 412 F.3d at 702.

Rather, the most substantive arguments in Bills' response to Defendants' summary judgment motion appear to be about an entirely separate transfer – that several "hours" after being transferred to KCF, he was then transferred to "*URF,*" placed into "segregation," and told that this was because he filed "lawsuits and grievances."  (ECF No. 112, PageID.1175).  Not only is this belied by the record of his confinement history (which reflects that he was transferred from MRF to KCF on March 23, 2017, and remained at KCF until being transferred to URF on May 4, 2017), but issues stemming from his transfer *from KCF to URF* are unrelated to Bills' instant claim against Steece concerning a retaliatory transfer *from MRF to KCF*.  Finally, while somewhat difficult to decipher, to the extent Bills asserts he suffered medical complications during his transfer from MRF to KCF, there is no evidence demonstrating that this was a foreseeable consequence of the transfer (especially in light of his extensive history of transfers), much less that it was foreseeable to Steece, such that this would sufficiently serve as an adverse action for purposes of his instant First Amendment retaliation claim.  *See Hill*, 630 F.3d at 474.  Accordingly, Bills failed to raise a genuine dispute of material fact as to whether his

transfer from MRF to KCF constituted an adverse action.[15]

### ii. Causal Connection

Even if Bills could show an adverse action, his retaliation claim would still fail as to the third prong, which requires him to show a causal connection between his protected activity and the adverse action.  Defendants argue that Bills cannot show a "causal connection between his protected conduct [] and the resulting transfer" because he "offers no evidence showing that Steece knew of Bills' lawsuits and grievances from ARF when Bills was transferred from MRF."  (ECF No. 100, PageID.1034).  They also assert that "Steece did not order Bills' transfer from [MRF]," citing to documentary evidence showing that Bills' "transfer order" and "security classification screen" were approved on March 20, 2017, "by the MRF inspector, not by Steece."  (*Id.*, PageID.1035).

To establish the causation element of a First Amendment retaliation claim, a plaintiff "must show that the decision was motivated, at least in part, by the plaintiff's protected activity."  *Neal v. Nowack*, 2010 WL 3277863, at *4 (E.D. Mich. July 9, 2010) (citing *Thaddeus-X*, 175 F.3d at 399).  However, "[b]are allegations by the plaintiff of malice on the part of a defendant are not enough to establish retaliation claims."  *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).  Moreover, courts have held that

---

[15] For all these reasons, even taking the evidence in the light most favorable to Bills, he also failed to show that, at the time of the events in question, it was clearly established that his transfer constituted an "adverse action."  *See, e.g.*, *Siggers-El*, 412 F.3d at 701; *LaFountain*, 716 F.3d at 948; *King*, 680 F.3d at 686.  Thus, Defendants are entitled to qualified immunity, as well.  *See Beaton v. City of Allen Park*, 2015 WL 3604951, at *10 (E.D. Mich. Jun. 8, 2015) ("[T]o defeat [Defendants'] assertion of qualified immunity, 'Plaintiff must show both that, viewing the evidence in the light most favorable to [him], a constitutional right was violated and that the right was clearly established at the time of the violation.'") (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).

26

"[t]here can be no causation where the defendant is not the decision-maker." *Richards v.*

*Sheltrown*, No. 12-12516, 2015 WL 1810254, at *6 (E.D. Mich. Apr. 17, 2015) (citing

*Smith v. Campbell*, 260 F.3d 1032, 1038 (6th Cir. 2001)); *see also Sheehee v. Luttrell*, 199

F.3d 295, 301 (6th Cir. 1999) (stating plaintiff failed to prove the necessary element of

causation for First Amendment retaliation because defendant was not a decision-maker

involved with his firing). Even where a plaintiff can establish causation, if the defendant

can show that the same action would have been taken in the absence of the protected

activity, the defendant is entitled to prevail on summary judgment. *See Neal*, 2010 WL

3277863, at *4 (citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001)).

In support of summary judgment, Defendants point to the fact that none of Bills'

transfer paperwork from MRF to KCF contains Steece's signatures, and, in particular, that

the Transfer Order expressly states the reason for his transfer: "Transfer to accommodate

bed-space for incoming Parole to Wayne County on 3/28 (Murphy 486803)." (ECF No.

100, PageID.1027-28, 1033-36).

In response, Bills argues that he was told he was being transferred for filing

"lawsuits and grievances" and accuses Defendants of "falsifying documentations," as he

contends that the original copy of the transfer paperwork contained *Steece's* signature.

(ECF No. 112, PageID.1175-76, 1179). Notably, in his response brief, and again at oral

argument, Bills claims that he sent this "true copy of the transfer screening" to the

Ombudsman for "safe keeping." (*Id.*, PageID.1177; *see also* ECF No. 117, PageID.1305-

06 ("Bills unequivocally asserted [at oral argument] that a number of months ago, he wrote

to the Ombudsman and provided a copy of the transfer order in question which he contends

expressly indicates that Steece approved the transfer.").

Based on Bills' contention, the Court directed Steece's counsel, given his position as a Michigan Assistant Attorney General, to attempt to obtain that alleged document from the Ombudsman and place it in the record, to the extent such document exists. (ECF No. 117, PageID.1305-06). Defendants filed a supplemental brief on November 5, 2021, which includes an e-mail from the Ombudsman dated November 2, 2021, stating that the Ombudsman "personally reviewed materials that Mr. Bills sent to us in 2020 and we do not have either [a transfer order or security classification screen from March 2017] in our records." (ECF No. 118, PageID.1311, 1318). In his supplemental response, Bills does not include a copy of the alleged "original" transfer order that he claims contains Steece's signature. (ECF No. 119).

Based on the evidence above, Defendants have initially shown that Bills' filing of lawsuits and/or grievances was not a motivating factor in the decision to transfer him from MRF to KCF, as the Transfer Order expressly states that he was transferred "to accommodate bed-space for incoming Parole to Wayne County." (ECF No. 100-5, PageID.1059). Bills' unsupported assertions to the contrary do not constitute competent *evidence* that raises a genuine issue of material fact to dispute this documented reason. *See Neal*, 2010 WL 3277863, at *4 (citing *Smith*, 250 F.3d at 1038); *Alexander*, 576 F.3d at 558. Moreover, both the Transfer Order and Security Classification Screen reflect that it was the MRF Inspector – not Steece – who approved the transfer. Again, Bills' unsupported assertions that these documents are all "forgeries" and that the Ombudsman has the "true copy" containing Steece's signature, do not constitute competent evidence

28

disputing the documents' contents. *Id.* Thus, as to this issue, too, Bills failed to raise a material question of fact. *Id.*

In sum, the foregoing shows that Bills failed to raise a material question of fact (1) that a causal link existed between his protected activity and his transfer from MRF to KCF, and (2) that Steece made the decision to transfer him. Accordingly, Defendants' motion for summary judgment should be granted. *See Richards*, 2015 WL 1810254, at *6; s*ee also McCaskill v. Dettloff*, 2014 WL 7403857, at *4 (E.D. Mich. Dec. 30, 2014) (causal connection cannot be established when the accused prison official was not the decision-maker with regard to the alleged act of retaliation). Thus, summary judgment should be granted for Steece on Bills' retaliation claim.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' motion for summary judgment **(ECF No. 100)** be **GRANTED** as to Bills' retaliation claim against defendant Steece, and **DENIED** as to Bills' access-to-the-courts claim against defendants Stewart and Diver in their individual capacities.

Dated: February 10, 2022              s/David R. Grand
Ann Arbor, Michigan                   DAVID R. GRAND
                                      United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to

file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 10, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager