UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKEY BILLS,

    Plaintiff,

v.

PAUL KLEE, *et al.*,

    Defendants.

Case No. 15-cv-11414
Hon. Matthew F. Leitman

_____/

**ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 123) TO REPORT AND RECOMMENDATION (ECF No. 120), (2) ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION, AND (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 100)**

Plaintiff Rickey Bills is a state inmate in the custody of the Michigan Department of Corrections (the "MDOC"). In this prisoner civil-rights action, Bills alleges that certain employees of the MDOC violated his constitutional rights. More specifically, Bills claims that (1) Defendants Renee Diver and Vaughn Stewart intentionally interfered with his access to the courts; and (2) Defendant Kristopher Steece retaliated against him for filing grievances and lawsuits by transferring him to a prison in Michigan's Upper Peninsula.

On June 18, 2021, Defendants moved for summary judgment on all of Bills' claims. (*See* Mot., ECF No. 100.) The motion was referred to the assigned

1

Magistrate Judge. On February 10, 2022, the Magistrate Judge issued a report and recommendation in which he recommended that the Court (1) grant summary judgment against Bills on his retaliation claim against Steece; and (2) deny summary judgment against Bills on his access-to-the-courts claim against Diver and Stewart (the "R&R"). (*See* R&R, ECF No. 120.)

Bills filed objections to the R&R on February 25, 2022. (*See* Objections, ECF No. 123.) He contends that the Magistrate Judge erred when he recommended that the Court grant summary judgment against him on his retaliation claim against Steece. (*See id.*) The Court has carefully reviewed Bills' objections, and for the reasons explained below, they are **OVERRULED**. The Court will therefore **GRANT** summary judgment against Bills on his claim that Steece retaliated against him in violation of the First Amendment and **DENY** summary judgment against Bills on his claim that Diver and Stewart denied him access to the courts.[1]

---

[1] Defendants did not file any objections to the portion of the R&R that recommended the Court deny their motion with respect to Bills' access-to-the-courts claim against Defendants Diver and Stewart. The failure to object to an R&R releases the Court from its duty to independently review the matter. *See Thomas v. Arn,* 474 U.S. 140, 149 (1985). In addition, the failure to file objections to an R&R waives any further right to appeal. *See Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Therefore, because Defendants have not filed any objections to the R&R, the Court will adopt Magistrate Judge's recommendation and **DENY** summary judgment against Bills with respect to his access-to-the-courts claim against Defendants Diver and Stewart.

# I

## A

Bills is currently serving a life sentence in the custody of the MDOC. In March 2017, he was incarcerated at the Macomb Correctional Facility ("MRF"). (*See* Bills Location Log, ECF No. 100-3, PageID.1049.) Steece was a deputy warden at MRF at all relevant times. On March 23, 2017, Bills was transferred from MRF to the Kinross Correctional Facility ("Kinross") in Michigan's Upper Peninsula. (*See id.*) Bills alleges that Steece ordered the transfer in retaliation for Bills having previously filed lawsuits and grievances against other MDOC employees. (*See* Am. Compl., ECF No. 67, PageID.604.) Bills further claims that Steece "directed officials at [Kinross] to isolate [him]" when he arrived at that facility. (*Id.*)

## B

Defendants moved for summary judgment on all of Bills' claims on June 18, 2021. (*See* Mot., ECF No. 100.) Relevant here, Defendants argued the Court should enter summary judgment against Bills on his First Amendment retaliation claim against Steece because (1) Bills had not shown that "Steece knew of Bills' lawsuits and grievances […] when Bills was transferred," (2) Bills' transfer did "not rise to the level of an adverse action" because the transfer did not change his security level

and did not remove him from the prison's general population, and (3) Steece did not "order or approve Bills' transfer from MRF." (*Id.*, PageID.1031–1036.)

The Magistrate Judge agreed. In the R&R, he concluded, among other things, that Bills had "failed to raise a genuine dispute of material fact as to whether his transfer from MRF to [Kinross] constituted an adverse action." (R&R, ECF No. 120, PageID.1397–1398.) In reaching this conclusion, the Magistrate Judge highlighted that "[a]ll of the salient MDOC paperwork reflect[ed] that Bills was kept at the same security level of II" after his transfer from MRF to Kinross and that there was "no evidence supporting Bills' assertion that Steece ordered him to be 'isolated' upon his transfer." (*Id.*, PageID.1396.)

Bills filed objections to the R&R on February 25, 2022. (*See* Objections, ECF No. 123.) Bills contends, among other things, that the Magistrate Judge erred when he concluded that Steece did not take an adverse action against him by having him transferred from MRF to Kinross. (*See id.*, PageID.1424.) The Court will examine Bills' reasoning in detail below.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of a report

4

and recommendation to which a party did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### III

### A

In order to prevail on his First Amendment retaliation claim against Steece, Bills must establish three elements: (1) he engaged in protected conduct, (2) Steece took an adverse action – *i.e.*, an action that would deter a person of ordinary firmness from continuing to engage in that conduct – against him, and (3) Steece's adverse action was motivated at least in part by that protected conduct. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). As explained above, the Magistrate Judge concluded, among other things, that Bills could not establish the adverse action element of his claim. The Court agrees – albeit for a slightly different reason.

Bills alleges that Steece took an adverse action against him by having him transferred from MRF to Kinross. The Sixth Circuit has explained that prisoner transfers generally do not constitute adverse actions because "prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). For these reasons, "a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not

5

[generally] considered adverse." *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013). Likewise, where a prisoner is transferred between prisons at the same security level, such a transfer is not usually considered adverse. *See Ward v. Dyke*, 58 F.3d 271, 275 (6th Cir. 1995) (holding that where prisoner was transferred between two "Level II" facilities, transfer did not constitute an adverse action even where "defendants admit[ed] that [the prisoner] was transferred in part to give prison staff a respite from his continuous barrage of grievances").

Bills has failed to show that Steece's conduct amounted to an adverse action under these standards. At most, Bills has shown that Steece may have played some role in the decision to transfer him to Kinross. Bills made that showing by pointing out that Steece's name appears on a security classification screen review form that was completed in connection with his transfer. (*See* ECF No. 100-5, PageID.1059-1060.) Critically, however, that review form and the other paperwork completed at MRF in connection with Bills' transfer to Kinross indicate that Bills' security level at Kinross should be the *same* as it was at MRF – Level II – and that Bills should *not* be placed in a "special handling" unit, such as "administrative segregation" or "detention" following his transfer. (*Id.*) Thus, Bills has shown only that Steece may have had participated in a "decision to transfer [him] from the general population of one prison to the general population of another," and to do so while maintaining his same security level; such a decision "is not [generally] considered adverse."

6

*LaFountain,* 716 F.3d at 948. Bills has therefore failed to show that Steece's alleged decision to transfer him to the general population and same security level at Kinross was an adverse action.

## B

Bills counters that the Court's analysis ignores the true circumstances of the transfer to Kinross that Steece ordered. He asserts that even though the review form bearing Steece's name suggests that he was to be placed in the same security level upon arriving at Kinross, that is not what actually happened. He says that, in fact, he "never spen[t] any time" in the general population at Kinross. (Objections, ECF No. 123, PageID.1421.) He insists that, instead, as soon as he arrived at Kinross, he was placed into "segregation/'suicide observation.'" (*Id*.) And he contends that even though Steece may have stated on the classification review form that he (Bills) should be placed in the same security level at Kinross, Steece actually directed the officials at Kinross to place him in segregation upon his arrival. (*See id.*) Bills says that Steece's actual role in the transfer thus amounts to an adverse action.

But the evidence that Bills relies upon does not sufficiently establish any connection between Steece and the decision by officials at Kinross to place Bills in segregation upon his arrival at that facility. Bills first says that an unnamed psychologist at Kinross told him that someone in the "MRF Deputy Warden Office" told Kinross officials that Bills "should be locked up and placed in protected

custody[] for the protection of staff." (*Id.*)  But it would be pure speculation to conclude that Steece was the person in the "MRF Deputy Warden Office" to whom the psychologist was referring.  Indeed, Bills has previously identified a second deputy warden at MRF who was involved in the decision to transfer him to Kinross – deputy warden Darnell Stewart (*see* Bills Resp. to Defs.' Mot. for Summ. J., ECF No. 112, PageID.1178–1179; Bills Aff., ECF No. 119, PageID.1319).  And Bills has not presented an affidavit, declaration, or other statement from the psychologist confirming that she was talking about Steece, as opposed to Stewart or some other person in the MRF Deputy Warden Office.  Simply put, the psychologist's statement does not link Steece to Bills' placement in segregation at Kinross. *See*, *e.g.*, *Clemente v. Vaslo*, 679 F.3d 482, 495 (6th Cir. 2012) (affirming summary judgment and explaining that "mere speculation [or] conjecture" is "insufficient to survive a motion for summary judgment") (internal quotation marks and citation omitted).

Bills next asserts that he was told that "prison officials from 'down state'" played a role in his placement in segregation at Kinross (Bills Resp. to Defs.' Mot. for Summ. J., ECF No. 112, PageID.1176), but he never identifies those "down state" officials or produces any evidence that any official at Kinross ever identified Steece as playing a role that decision.  Nor has Bills presented any evidence that Steece communicated with anyone at Kinross with respect to Bills' placement in

segregation at that facility. Simply put, Bills has not presented any evidence that Steece had any connection to his placement in segregation at Kinross.

In sum, the record with respect to Bills' transfer to Kinross reflects (at most) that Steece recommended that Bills be transferred to the same security level at Kinross. There is no evidence linking Steece to the decision by Kinross officials to deviate from Steece's recommendation and place Bills in segregation upon his arrival. The record therefore fails to persuade the Court that Steece's role in Bills' transfer amounted to an adverse action.

## C

In the alternative, Bills argues that even if Steece participated in a decision to transfer him to a different facility at the same security level, that decision nonetheless constituted an adverse action because it was "reasonably foreseeable" that the transfer would cause him to suffer negative consequences. *Siggers-El*, 412 F.3d at 702. *See also Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) ("[A] prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner"). This argument fails because Bills has not identified any cognizable negative consequences here that transform his transfer to Kinross into an adverse action.

Bills first says that his transfer involved a foreseeable negative consequence because "up north facilities" like Kinross are known to be "disciplinary prisons and

9

prison[ers] who are transferred across the bridge [to Michigan's Upper Peninsula] are [transferred] for disciplinary purpose[s]." (Objections, ECF No. 123, PageID.1424.) But Bills has not presented any actual evidence that the prisoner population of Kinross differs in any material respect from the prisoner population of MRF. Moreover, as the Sixth Circuit has explained, a transfer between prison facilities does not generally rise to the level of an adverse action even if the facility to which a prisoner is transferred is "less desirable":

> Nor is it relevant that the new facility, although also a level II facility, is less desirable than the facility from which Ward was transferred. *See Meachum* [*v. Fano*], 427 U.S. [215,] 225 [(1976)] ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.").
>
> The transfer here was to another level II facility; the fact that a prisoner may not like a certain prison location does not automatically transform a valid transfer into a constitutional violation. [Plaintiff] ha[d] no constitutional right to remain at a specific facility or to prevent a transfer to another level II facility for a permissible reason.

*Ward*, 58 F.3d at 275.

Bills next says that "[w]hen prisoners are transferred (500) miles away from love[d] ones," such a transfer constitutes "a lost[] privilege[] that causes a great deal of stress and mental depression." (Objections, ECF No. 123, PageID.1425.) While

10

being transferred far away from family could potentially qualify as a cognizable negative consequence in some circumstances, Bills has not presented any evidence that he suffered such a consequence here. For example, he has not presented any evidence as to where his friends and family live or work. Nor has he presented evidence that his friends and family actually visited him at MRF, and without such evidence it is impossible to determine whether his move to Kinross truly resulted in the loss of in-person contact with family and friends that he otherwise would have had if not for the transfer.

Finally, Bills says that Steece "knew or should have known" that the transfer to Kinross would be especially traumatic to him because he was stabbed during a prison attack while imprisoned in Michigan's Upper Peninsula 40 years ago. (*Id.*, PageID.1425-1426.) Bills therefore says it was foreseeable to Steece that the transfer to Kinross would cause him mental anguish from this post-traumatic stress. (*See id.*) But Bills has not presented any evidence that Steece knew that Bills had been previously attacked at a facility in the Upper Peninsula or that it was "foreseeable" to Steece that transferring Bills to Kinross would be especially traumatic. And while Bills says that his "mental medical records [indicate] that he not been transferred up north" (*id.*, PageID.1425), Bills has neither submitted those records to the Court nor provided evidence Steece had access to them or knew about them prior to the transfer.

11

**D**

For all of these reasons, Bills has not shown that Steece took an adverse action against him. Accordingly, the Court agrees with the Magistrate Judge's conclusion that Bills' First Amendment retaliation claim against Steece fails as a matter of law. Bills' objections to the Magistrate Judge's recommendation to grant summary judgment against him on his First Amendment retaliation claim against Steece are therefore **OVERRULED**.[2]

**IV**

For the reasons stated above, **IT IS HEREBY ORDERED** as follows:

- Bills' objections to the R&R (ECF No. 123) are **OVERRULED**;

- The recommended disposition of the R&R (ECF No. 120) is **ADOPTED**; and

- Defendants' motion for summary judgment (ECF No. 100) is **GRANTED IN PART AND DENIED IN PART** as set forth above. The motion is **DENIED** with respect to Bills' access-to-the-courts claim against Defendants Diver and Stewart. The motion **GRANTED** with respect to Bills' retaliation claim against Defendant Steece.

**IT IS SO ORDERED**.

Dated: March 24, 2022

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court concludes that Bills has not established the required adverse action element of his First Amendment retaliation claim, it need not and does not address the Magistrate Judge's alternative bases for granting summary judgment against Bills on his claim against Steece.

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 24, 2022, by electronic means and/or ordinary mail.

                                            s/Holly A. Ryan
                                            Case Manager
                                            (313) 234-5126